**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| *Plaintiffs*, | |
| *v.* | Case No.: 1:23-cv-03343-APM |
| U.S. OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, et al., | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPLETE AND SUPPLEMENT
THE ADMINISTRATIVE RECORD**

**TABLE OF CONTENTS**

TABLE OF EXHIBITS…………………………………………………………...………iii

INTRODUCTION……………………………………………………………...…………1

NATURE OF THE CASE AND FACTUAL BACKGROUND…………………………….4

STANDARD OF REVIEW……………………………………………………………….7

ARGUMENT………………………………………………………………………...9

     I.     Defendants Must Complete the Record……………………………………...9

     II.    The Court Should Allow Supplementation of the Record……………………16

CONCLUSION………………………………………………………………………...30

**TABLE OF EXHIBITS**

| Exhibit No. | Document |
| --- | --- |
| Exh. 1 | U.S. Fish and Wildlife Service. Final Programmatic Biological Opinion and Conference Opinion on the United States Department of the Interior Office of Surface Mining Reclamation and Enforcement's Surface Mining Control and Reclamation Act Title V Regulatory Program. October 16, 2020. |
| Exh. 2 | U.S. Office of Surface Mining Reclamation and Enforcement. State Program Mine Site Evaluations and associated water quality-related violations records for South Fork Coal Company mining facilities adjacent to candy darter critical habitat on South Fork Cherry River. May 31, 2023; June 1, 2023; and December 11, 2020. |
| Exh. 3 | U.S. Office of Surface Mining Reclamation and Enforcement. Redacted emails regarding state Title V program compliance review. May 16, 2023. |
| Exh. 4 | U.S. Office of Surface Mining Reclamation and Enforcement. Spreadsheet regarding 2022 offsite impacts from water quality violations in West Virginia mines nearby upstream from designated critical habitat. |
| Exh. 5 | U.S. Office of Surface Mining Reclamation and Enforcement and West Virginia Department of Environmental Protection. Turbidity and Total Suspended Solids Monitoring Within Watersheds of Known Guyandotte River Crayfish Presence in West Virginia report draft. July 6, 2023. |
| Eh. 6 | West Virginia Department of Environmental Protection. Show cause order regarding Rocky Run Mine water quality-related violations. August 12, 2021 |
| Exh. 7 | Center for Biological Diversity. Complaint to OSMRE regarding Point Lick Surface Mine permitting noncompliance with 2020 BiOp. November 17, 2023. |
| Exh. 8 | Appalachian Voices and West Virginia Highlands Conservancy. Complaint to OSMRE regarding Poca #11 Mine permitting noncompliance with 2020 BiOp. December 16, 2023. |
| Exh. 9 | Center for Biological Diversity, Appalachian Voices, *et al*. Complaint to OSMRE regarding Rocky Run Haulroad #2 permitting noncompliance with the 2020 BiOp. December 8, 2023. |
| Exh. 10 | Center for Biological Diversity, Appalachian Voices, *et al*. Email delivering complaint to OSMRE regarding Rocky Run Haulroad #2 permitting noncompliance with the 2020 BiOp. December 8, 2023. |

**INTRODUCTION**

Pursuant to Local Rule 7 and the Court's Scheduling Order (ECF No. 24), Plaintiffs respectfully move the Court for an order compelling the completion of the administrative record, and the supplementation of the record. Defendant Office of Surface Mining Reclamation and Enforcement ("OSMRE") has wrongly omitted documents that should have been included in the record, as they were in the possession of the agency and were considered (or should have been considered) in the course of OSMRE's ongoing review of the Endangered Species Act ("ESA") violations at issue in this case. Plaintiffs also seek supplementation of the record with several documents that pertain to those violations, and which meet the criterion for supplementation because they are adverse to OSMRE's position and were deliberately excluded, or because they provide important background and technical information necessary for the Court to determine whether the agency examined all of the relevant factors. Through its motion, Plaintiffs thereby seek to ensure that the Court has before it the necessary documents to determine whether Defendants have violated the ESA in the implementation of the Surface Mining Control and Reclamation Act ("SMCRA") Title V regulatory program and attendant coordination duties under the ESA.

At the outset, however, Plaintiffs take the position that, while this case can be reviewed with reference to a record, because this case concerns ESA citizen suit claims it is not limited to the administrative record, and therefore documents outside the record may be considered by the Court. As the Ninth Circuit has explained in numerous cases, ESA citizen suit claims are not limited to an administrative record, particularly in a case such as this, where the agency repeatedly failed to comply with the procedural requirements of a biological opinion and failed to use the best available science to ensure that SMCRA-regulated coal mining will not jeopardize

1

protected species. Here, Plaintiffs' First Claim (that Defendants failed to reinitiate Section 7 consultation), and Second Claim (that OSMRE has failed to insure against jeopardy), are ESA citizen suit claims rather than APA claims. *See Bennet vs. Spear*, 520 U.S. 154 (1997). While there has been some confusion amongst courts as to this issue because the ESA borrows the APA's *standard* of review (i.e., the arbitrary and capricious standard)—because the ESA does not specify a standard—it is well-settled that such claims are not limited to the APA's *scope* of review, and thus are not limited to the administrative record. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (holding that the court "may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim"); *Wash. Toxics Coal. v. U.S. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."); *see also Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796, 801 (E.D.N.C. 2016) (same).

The general rule is thus that ESA citizen suit claims are not limited to an administrative record, in contrast to claims reviewed under the APA. *See, e.g.*, *Ctr. for Biological Diversity v. Ross,* 349 F. Supp. 3d 38, 45 (D.D.C. 2018) (holding that claims regarding ongoing violations of the ESA are not limited to the record, citing *Kraayenbrink*); *Conservation Cong. v. U.S. Forest Serv.*, No. 2:16-cv-00864-MCE-AC, 2017 WL 4340254, at *2 (E.D. Cal. Sep. 28, 2017) (holding that "the scope of the Court's review in the context of claims brought under the ESA's substantive citizen suit provision [] must not be limited by the APA's record review rule," citing *Washington Toxics* and *Kraayenbrink*); *Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 467-69 (N.D. Cal. 2017) (same); *Ellis v. Housenger*, No. C-13-1266 MMC, 2015 WL 3660079, at *3-4 (N.D. Cal. June 12, 2015) ("In sum, where a claim is brought under [the ESA's

2

citizen suit provision], the district court 'borrow[s] . . . the *standard* [of review] from the APA,' but does 'not similarly borrow[ ] the APA's *scope* of review.'") (citations omitted); *Defenders of Wildlife v. Martin*, 454 F. Supp. 2d 1085, 1094 (E.D. Wash. 2006) (holding that, where a claim arises under the citizen suit provision of the ESA, a court shall consider evidence outside the administrative record).

Applying this rule, several district courts have allowed discovery and/or the admission of extra-record evidence such as expert reports when reviewing ESA citizen suit claims.[1] Here, however, Plaintiffs are not seeking discovery or the admission of extra-record reports or expert analysis generated by Plaintiffs. Rather, Plaintiffs are seeking to admit into the record a small set of documents, all of which are already in the possession of Defendants and have been since before the Plaintiffs' First Amended Complaint (ECF No. 13) was filed—several of which were in fact created by Defendants—that are essential to the Court's review. A major component of Plaintiffs' ESA claims is that OSMRE failed to provide the oversight that the 2020 Biological Opinion requires, and that OSMRE and FWS have failed to ensure against jeopardy as the ESA requires. The Biological Opinion also creates a convoluted process, requiring interactions between OSMRE and the states as well as between the states and FWS, and it is the breakdown of this process which requires the reinitiation of consultation.

---

[1] *See, e.g.*, *Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-5109 BHS, 2012 WL 5384896, at *1 (W.D. Wash. Nov. 1, 2012) (confirming that parties may obtain discovery and the court may consider extra-record evidence in ESA citizen suits); *Conservation Cong. v. Finley*, No. C 11-04752 SC (LB), 2012 WL 1564946, at *1 (N.D. Cal. May 2, 2012) (denying defendants' request to bar discovery because the claims at issue "were brought pursuant to the citizen-suit provisions of the [ESA] and, thus, are not subject to the administrative-record limitation"); *Or. Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1217, 1219-20 (D. Or. 2009) (allowing plaintiffs to introduce evidence, including expert reports and evidence obtained through discovery, to prove their ESA citizen suit claims).

Because of the complexity of the process under the Biological Opinion and the failure at every level of the parties to comply with that process, the record must detail what has been overlooked. Since the agency's ignored the requirements of the Biological Opinion and the resulting ongoing impacts to listed species, and unlawfully failed to reinitiate consultation, the administrative record needs to contain necessary information about those ongoing failures, and the documents set forth below are essential for the Court's review of those claims.

Since review of ESA citizen suit claims is not limited to the record, Plaintiffs take the position that they could refer to these documents in their forthcoming motion for summary judgment and attach them as exhibits. However, for the Court's convenience and for the sake of judicial efficiency—and to avoid unnecessary litigation over the admissibility of such documents following summary judgment briefing—Plaintiffs bring this motion in order to have these documents included with the administrative record, since they meet the standards for inclusion, as set forth below.

### NATURE OF THE CASE AND FACTUAL BACKGROUND

In this case, Plaintiffs seek to enforce violations of the ESA, 16 U.S.C. §§ 1531–1544, in connection with Defendants' failure to properly implement the Final Programmatic Biological Opinion and Conference Opinion on the United States Department of the Interior Office of Surface Mining Reclamation and Enforcement's Surface Mining Control and Reclamation Act Title V Regulatory Program ("2020 BiOp").

The environmental impacts of surface coal mining are regulated pursuant to Title V of SMCRA. 30 U.S.C. §§ 1251a - 1279. OSMRE is the primary regulator of coal mining under SMCRA, *id.* § 1211, and even after a SMCRA program has been delegated to a State, OSMRE retains oversight of that program through supervision of the State's implementation of the

regulatory program. *See, e.g.*, Id. § 1271.[2] This includes oversight and enforcement of the SMCRA provisions regarding protected species, including by ensuring that the required Protection and Enhancement Plans ("PEPs") are developed, 30 C.F.R. § 780.16(a)(1), and that any mining that could jeopardize a listed species or harm designated critical habitat is prohibited. 30 C.F.R. § 816.97(b); see also, Id. §§ 773.15(j), 772.12(d)(2)(ii), 772.13; 43 C.F.R. § 3410.2-2(a)(2).

The 2020 BiOp requires OSMRE to implement SMCRA in order to protect listed species, and OSMRE's oversight and enforcement authority over state-implemented SMCRA programs is both programmatic and permit-specific. 2020 BiOp (Exh. 1) at 72. Indeed, The Service identifies the oversight and enforcement of state implementation of PEPs for listed species as central to OSMRE's implementation of Title V of SMCRA. *Id.* at 3 ("[O[versight of State regulatory programs with primacy, [] includes oversight of State program compliance with requirements related to the protection and enhancement of proposed or listed species and proposed or designated critical habitats.").

Furthermore, upon receipt of any information from any source that any "person" has violated any requirement of SMCRA or a SMCRA permit condition, OSMRE is required to initiate corrective law enforcement procedures with—and potentially against—the States. *Id.* at 72-74. *See also,* 30 U.S.C. § 1271(a)(1); see also 30 C.F.R. §§ 842.11(b)(1), 843.12(a)(2). As the

---

[2] SMCRA specifically requires that OSMRE evaluate and oversee the administration of approved state Title V programs, and requires that OSMRE enforce the terms of the statute and substitute its enforcement power for that of the State – or take back implementation authority from the State – should it find that the State has failed to adequately enforce its state-delegated SMCRA program. 30 U.S.C. § 1271(b); 30 C.F.R. §§ 842.11, 733.12, 733.13 *See also* 2020 BiOp (Exh. 1) at 4 ("OSMRE retains enforcement authority for States and Tribes with primacy and is responsible for ensuring that the State or Tribal regulatory authority is effectively implementing, administering, maintaining, and enforcing their program.").

2020 BiOp observes, the purpose of such federal engagement with the States is to provide an early intervention in order to prompt the States to resolve legal violations before they rise to the level where more drastic corrective measures are required. Exh. 1 at 73; *see also,* 30 C.F.R. § 733.12. The only means by which OSMRE's evaluation of delegated state programs' compliance with SMCRA is guaranteed is via the agency's duty to "evaluate the administration of each state program at least annually," 30 C.F.R. § 733.13(a)(1), which requirement results in OSMRE's annual evaluation reports of each state's Title V program.

The 2020 BiOp explicitly relied on the effectiveness of this cooperative federalism oversight and enforcement scheme to find that SMCRA permit compliance was assured. *See* Exh. 1 at 74 ("[T]he Service anticipates OSMRE and State regulatory authorities will utilize the full extent of their respective authorities to monitor and enforce the mining regulatory programs these agencies oversee. Thus, the Service finds that OSMRE, as the action agency implementing the proposed action, has included a mechanism to adequately monitor and enforce permit compliance for activities covered by OSMRE's Program.").

The 2020 BiOp further made clear that the successful implementation of a PEP's active mining and post-mining species-specific protective measures ("SSPMs") is a prerequisite to regulatory agencies and operators availing themselves of the Incidental Take Statement. *See* Exh. 1 at 17-18 ("[T]he PEP must include protective measures that will be used during the active mining phase of operation," and PEPs "must be implemented as a mandatory condition in the permit" to obtain incidental take coverage). The Service's no jeopardy determination and ITS in the 2020 BiOp is therefore premised on OSMRE ensuring SMCRA permit compliance via effective oversight, including regarding the effective drafting and implementation of PEPs and protective measures within the states. *See also,* Exh. 1 at 83 (RPM 2).

6

**STANDARD OF REVIEW**

Defendants "bear the responsibility of compiling the administrative record, which must include all of the information that the agency considered 'either directly or indirectly.'" *Univ. of Colo. Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)). Although the government's designation of the administrative record is entitled to a presumption of regularity, *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 287 (D.D.C. 2013), "a complete administrative record should include all materials that might have influenced the agency's decision[.]" *Id*. at 288 (quoting *Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (citations and internal quotes omitted)). "[A]n agency 'may not skew the record by excluding unfavorable information . . . .'" *Id.* (quoting *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007)). Furthermore, the agency "may not exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Id.* (quoting *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)).

And while the administrative record must include all of the materials that were before the agency at the time of its decision, *see Citizens to Pres. Overton Park v. Volpe,* 401 U.S. 402, 419-20 (1971), for claims regarding ongoing legal violations, such as for agency inaction under 5 U.S.C. § 706(1) or claims regarding an ongoing failure to comply with the ESA, the Court's scope of review is not limited to a record at any particular moment in time because no final agency action exists to define the limits of the record. *See Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021) (stating that in a case involving ongoing legal violations, the record may be supplemented with material that was produced even *after* the initial lodging of the administrative record "because there is no clear end-point to decision-making when an agency

7

has failed to act) (citations omitted); *Chem. Weapons Working Group v. United States DOD*, 2007 U.S. Dist. LEXIS 102547, *5-9 (D.D.C. Mar. 7, 2007) ("[I]n cases involving challenges to agency inaction 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.'") (quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000)). Therefore, in a case such as this concerning an ongoing failure to comply with the law, the record must contain all of the documents that pertain to the agencies' review of the alleged violations, *id.*, including documents that post-date the filing of the complaint if they are relevant to such agency review. *Chem. Weapons Working Group,* 2007 U.S. Dist. LEXIS 102547, *5-9.

Even in cases where review is limited to the administrative record—which as discussed above does not apply to ESA citizen suit claims—Plaintiffs may seek to supplement the record under three circumstances: (1) when "the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,'" (2) when "background information [is] needed 'to determine whether the agency considered all the relevant factors,'" and (3) when "the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Under the first such scenario, Plaintiffs' burden to prove that adverse information was deliberately or negligently excluded by the agency is straightforward: "A plaintiff can make a *prima facie* showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) "are directly related to the decision," and (3) "are adverse to the agency's decision." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005).

**ARGUMENT**

## I.    Defendants Must Complete the Record

Plaintiffs move to complete the record with the following materials that were in the possession of the agency and were considered either directly or indirectly during its review of the ongoing violations of the ESA set forth in Plaintiffs' complaint. In the alternative—and to the extent Defendants may argue that OSMRE somehow failed to consider these highly relevant documents that were in its possession—Plaintiffs request that the record be supplemented with these documents as they were then deliberately or negligently excluded because they were adverse, and/or provide important background and technical information necessary for the Court to determine whether the agency examined all of the relevant factors.

### A.  OSMRE Enforcement Records Against Rocky Run Mine

Plaintiffs move to complete the record with OSMRE's enforcement documents regarding water quality-related violations at the Rocky Run mine in the endangered candy darter's designated critical habitat unit 5f on the South Fork Cherry River. Exh. 2. OSMRE's documents compile WVDEP violations records that OSMRE obtained in its oversight role of the State SMCRA program, and contain analysis generated by OSMRE based on those state records for the purpose of reviewing WVDEP's enforcement actions.

OSMRE however, applied the wrong standard in excluding the portions of the document file from the record that are included in Exhibit 2. While the agency provided some of the information from this enforcement file, it only included those documents that specifically mention PEPs, and excluded violations records that do not mention listed species impacts or PEPs. However, this ignores that all of the violations discussed in Exhibit 2 that do not mention listed species or PEPs but pertain to water pollution and sediment control violations from mines

9

that are in close proximity to–and upstream from–designated critical habitat for the endangered

candy darter. Exhibit 2 documents problems with the operator contaminating the watershed with

toxic coal pollution, as well as an 18-month period of continuous violations wherein the operator

declined to comply with permit requirements to revegetate denuded soils. Exh. 2 at 1-7. The

enforcement records show that the operator was granted extension after extension while

declining to take any effective enforcement action to bring about compliance or hold the operator

accountable, even after documenting 18 consecutive months of noncompliance. Exh. 2 at 8-37.

Furthermore, Exhibit 2 documents more water quality-related violations by the same operator at

different mining facilities in the same watershed–with potential impacts to the same critical

habitat–including operating failed sediment control structures and failure to follow the "Forestry

Reclamation Approach" permit requirements, which include vegetation cover requirements. *Id.*

at 38-47.

Therefore, the failure to mention listed species or the need for PEPs is no reason to

exclude documents from the record. To the contrary, those violations document significant,

chronic water quality violations very close[3] to designated critical habitat for the endangered

candy darter on the South Fork Cherry River, and thus show potential harm to listed species

where the agencies *ignored* the potential for such harm and the need for a PEP, thereby showing

that they failed to consider all relevant factors. Therefore, they are highly relevant to OSMRE's

failure to take enforcement action to prevent jeopardy, and to reinitiate consultation on the Title

V program.

---

[3] The mining facilities in this watershed are frequently within a quarter mile upstream from candy darter critical habitat unit 5f.

OSMRE thereby excluded relevant, unfavorable information that was clearly before the agency (since it provided portions of the document file) when the alleged failures to act took place. OSMRE therefore unlawfully excluded these documents from the record. *See City of Duluth*, 968 F. Supp. 2d at 288 ("[A] complete administrative record should include all materials that might have influenced the agency's decision[.]"). OSMRE "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." *Id.* (quoting *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007)). Since these documents were before the agency and considered by OSMRE but excluded only because they fail to mention PEPs, OSMRE applied the wrong standard. The excluded documents are highly relevant because they expose the ineffectiveness of the regulatory scheme prescribed by the 2020 BiOp to prevent jeopardy to listed species and adverse modification of designated critical habitat. This ineffectiveness in preventing harm to listed species and their critical habitat, in turn, is highly relevant to the question of whether species are being jeopardized, and whether OSMRE must reinitiate consultation with FWS—the central issues in this litigation. They are therefore part of the administrative record, and the Court should order OSMRE to complete the AR with Exhibit 2.

### B.  OSMRE Emails Regarding State Compliance with 2020 BiOp

Plaintiffs move to complete the record with three pages of OSMRE emails regarding Kentucky's, West Virginia's, and Virginia's compliance with the 2020 BiOp. These emails provide important factual information specific to the agency's review of the legal violations set forth in Plaintiffs' Complaint, and therefore are properly part of the record.

These emails concern communications following Plaintiffs' April 6, 2023, Notice of Intent to Sue letter ("NOI"), wherein OSMRE began communicating with FWS about the degree

of implementation of the 2020 BiOp coordination procedures in the three states at issue in this litigation. Plaintiffs received partially-redacted versions of these emails from OSMRE via a FOIA request. *See* Exh. 3. In those emails, OSMRE described factual information provided by FWS, which indicated that since the finalization of the 2020 BiOp and as of May 2023, Kentucky had failed to submit *any* Protection and Enhancement Plans—documents required pursuant to the 2020 BiOp to ensure listed species would be protected— to FWS for coordination and review; West Virginia had submitted only 10 PEPs to FWS; and that FWS was unable to determine how many PEPs Virginia had submitted. *Id.* at 2. FWS also indicated that Kentucky currently had zero PEPs under review by FWS; that West Virginia currently had "3+" PEPs under review; and that FWS simply reported "a backlog of reviews" for Virginia PEPs. *Id.*

It is readily apparent that OSMRE considered these documents, since they consist of emails produced by OSMRE specifically to analyze the validity of Plaintiffs' claims in the present litigation. The only reason they have been excluded is Defendants' contention that they are deliberative. However, the factual information set forth in the emails is not deliberative, and is highly relevant to the adjudication of the present claims, as it reveals the widespread nonfeasance by OSMRE and FWS in ensuring compliance with the 2020 BiOp's coordination procedures. The redacted copies provided by OSMRE through FOIA already remove any deliberative language. The Court should therefore order the agency to complete the record with the redacted copies of the emails, which preclude protected language but preserve all strictly factual information.

### C. OSMRE Spreadsheet of Water Quality Violations at Relevant West Virginia Mines

Plaintiffs move to complete the record with a readily legible[4] version of a list compiled by OSMRE regarding water quality-related violations with impacts to aquatic habitat at many West Virginia mines in close proximity to designated critical habitat for listed species. *See* Exh. 4. Plaintiffs obtained these records directly from OSMRE via a FOIA request. Exhibit 4 compiles over 170 water quality-related violations documented by WVDEP at dozens of mines in close proximity upstream from designated critical habitat for listed aquatic species in West Virgina throughout parts of 2021 and 2022. *Id.* OSMRE acknowledged that it created this list pursuant to the development of its 2022 annual evaluation report for WVDEP's Title V program, but refused to include this document in the record, claiming that it is raw data that was not considered by the agency's Field Office Director.

This information is highly relevant to the adjudication of Plaintiffs' claims because it demonstrates the widespread unlawful water pollution that is impacting designated critical habitat for listed aquatic species in spite of the existence of the 2020 BiOp. Thus, it exposes the ineffectiveness of the regulatory scheme prescribed by the 2020 BiOp to prevent jeopardy to listed species and adverse modification of designated critical habitat. This ineffectiveness in preventing harm to listed species and their critical habitat, in turn, is highly relevant to the question of whether OSMRE should reinitiate consultation with FWS or substitute its

---

[4] Exh. 9 is effectively 4 lists. However, because it was converted from another format to a .pdf file, it has been rendered nearly impossible to read. Pages 1-4 of the document are the first pages of each of the 4 lists, pages 5-8 are the second pages of each of the lists, and so on, such that the first list can be reviewed by reading pages 1, 5, 9, 13, 17, 21, 25, 29, 33, 37, and 41. This is one reason why OSMRE should add a new, readily-legible version of this document in its native format to the record. Also, because of its conversion to a .pdf file, the descriptive text regarding the nature of the violations gets cut off mid-stream in several places.

enforcement powers for those of the states in order to prevent jeopardy to listed species in harm's way of coal mines. And there are clearly non-speculative grounds establishing that OSMRE considered the document, since OSMRE produced this spreadsheet specifically to analyze the sufficiency of WVDEP's Title V program in protecting listed species from jeopardy in its 2022 annual evaluation report, which goes directly to Plaintiffs' first two claims in the present litigation. To the extent that OSMRE has claimed that Exhibit 4 was the work of subordinates and was not reviewed by the Field Office Director and therefore is not part of the record, that argument is unavailing, since "[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *City of Duluth¸* 968 F. Supp. 2d at 288.

Moreover, Exhibit 4 is not raw data. Rather, it is an analysis document that OSM *assembled* from raw data in order to analyze the degree to which water quality violations at mines that could impact designated critical habitat for listed aquatic species were resulting in impacts to water bodies outside of the footprint of those mines. Plaintiffs are not seeking to have any raw data included in the record; rather, they seek to incorporate the agency's analysis document that compiled a subset of that data to examine downstream impacts from SMCRA-permitted mining activities. This document was created by OSMRE as a part of its annual review of WVDEP's Title V program, and is designed to assess the nature and extent of water quality-related violations that travelled off-site from West Virginia coal mines during a time period spanning parts of 2021 and 2022. The "raw data," as it were, that was used by OSMRE to

14

construct this spreadsheet can be found on WVDEP's mining permit portal,[5] but again, Plaintiffs are not seeking the admission of this raw data.

In the alternative—and in light of OSMRE's irrational position that failed to consider this important analysis document it specifically created to examine WVDEP's track record in implementing listed species protections—Plaintiffs move to supplement the record with Exhibit 4. Here, supplementation is warranted because "the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,'" and because the exhibit provides "background information [is] needed to determine whether the agency considered all the relevant factors . . ." *City of Dania Beach*, 628 F.3d at 590 (internal quotations omitted).

First, there can be no doubt that the document was known to the agency at the time it made its decision, as OSMRE created the document by its own admission. And as stated above, it is certainly directly related to the decision at issue (i.e., not to reinitiate consultation) as well as OSMRE's ongoing review of ESA compliance since it involves water quality violations that affect listed species and therefore the need for enforcement action against the states to ensure the faithful implementation of Title V of SMCRA and the 2020 BiOp. Indeed, the document showed 170 such violations over a roughly year-long period, and is therefore adverse to the agency's position. Exh. 4. Therefore, the document's findings speak directly to whether OSMRE has a duty to step in to an enforcement role to compensate for West Virginia's failure to prevent offsite water quality impacts to listed species due to Title V violations. They also speak directly to whether OSMRE should reinitiate consultation on the Title V program, due to the insufficiency of WVDEP's enforcement activities to prevent jeopardy to listed species. Finally, the report is

---

[5] https://dep.wv.gov/insidedep/Pages/miningpermitsearch.aspx. A free account is required to access the information at this portal.

adverse to OSMRE's decision not to reinitiate consultation or prevent jeopardy by using its enforcement powers to ensure compliance with Title V, because in both cases, they answer the question in the affirmative. Thus, the record should be supplemented with the study report. *Fund for Animals,* 391 F. Supp. 2d at 198 (describing the *prima facie* showing that Plaintiff can make to show an agency improperly excluded adverse information from the record and thus supplementation is warranted).

Supplementation is also warranted because Exhibit 4 provides the Court with essential background information to help determine whether the agency considered all the relevant factors. *See id.* The information in this document indicates that WVDEP's enforcement actions are not effectively protecting listed species from coal mining pollution-induced jeopardy. Thus, this document is highly relevant to whether listed species are being jeopardized, whether OSMRE is ensuring compliance with the 2020 BiOp, whether OSMRE should reinitiate consultation on the Title V program, and whether the 2020 BiOp is sufficiently protective of listed species. Without this information, the Court cannot determine whether OSMRE considered all of the relevant factors. *City of Dania Beach*, 628 F.3d at 590.

## II.    The Court Should Allow Supplementation of the Record

Plaintiffs seek supplementation of the record with the following documents as they were deliberately or negligently excluded because they were adverse, and/or provide important background and technical information necessary for the Court to determine whether the agency examined all of the relevant factors.

### A.  OSMRE-West Virginia Crayfish and Mining Water Quality Study

Plaintiffs move to supplement the record with a report created by OSMRE following a study undertaken by the agency regarding harm to endangered crayfish from water quality

impacts at coal mines in West Virginia. Exh. 5. This document provide highly relevant

information from a study carried out by OSMRE itself on the exact topic at the core of the

controversy in this litigation, and therefore provide important background information necessary

to determine whether the agency considered all the relevant factors and appears to be adverse

information that was deliberately or negligently excluded from the record. *City of Dania Beach*,

628 F.3d at 590.

In its 2021 Budget Justifications and Performance Information Fiscal Year report,

OSMRE reported:

> OSMRE scientists are working with West Virginia Department of Environmental Protection (WVDEP) to gather measurements of turbidity, temperature, Specific Conductance, and [total suspended solids] in streams located within watersheds of known threatened and endangered crayfish presence. Major tributaries will be monitored for sediment-loading contributions from coal mining activity and other anthropogenic activities. Coal-mining facilities will be evaluated, directly, by bracketing permitted areas and through direct deployment of monitors to assess contributions from sediment control structures . . . OSMRE is working in cooperation with the WVDEP to ascertain the impacts of sediment on stream habitat of the recently listed as threatened or endangered Guyandotte and Big Sandy crayfish . . . The study will determine the origin(s) of the sediment and if existing erosion and sedimentation controls used by the mining operations and approved by the WVDEP are effective in protecting these species . . . OSMRE commenced this study in 2019 and will continue it during 2020.[6]

Levels of sediment pollution in these animals' habitat is highly determinative of whether their

habitat is suitable for the survival of the species. As FWS has noted, "[s]uitable habitat for both

the Big Sandy crayfish and the Guyandotte River crayfish appears to be limited to higher

elevation, clean, medium-sized streams and rivers in the upper reaches of the Big Sandy and

Guyandotte river basins, respectively." 85 Fed. Reg. 5072, 5076 (Jan. 28, 2020). Turbidity and

suspended solids in the water column are particularly harmful to these species because of the

---

[6] These excerpts from OSMRE's 2021 budget report can be accessed at pages 73 and 89 of the document at https://www.doi.gov/sites/doi.gov/files/uploads/fy2021-budget-justification-osmre.pdf (last visited October 30, 2024).

17

interrelated problem of sedimentation of the stream bottom habitat when sediment settles out of the water column. "Excessive sedimentation leading to substrate embeddedness creates unsuitable conditions for these species…" *Id.*

Plaintiffs obtained the monitoring report from OSMRE via a FOIA request. *See* Exh. 5. Data collection for these studies were carried out in the last two streams inhabited by the endangered Guyandotte River crayfish, and ran from April 2019 through March 2021. *See, e.g.,* Exh. 5 at 10, 62-66, 85-88. The final draft report for this study was completed July 6, 2023. *Id.* at 3. The reports document significantly elevated levels of sediment pollution in Pinnacle Creek and Clear Fork, the Guyandotte River crayfish's last remaining streams:

> Overall, turbidity values at sonde locations within the Clear Fork Watershed were lower than the locations monitored in the Pinnacle Creek Watershed. This is most likely the result of increased erosion and sediment transport originating from denuded riparian zones, extensive off road vehicle (ORV) activity, surface mining sites, and mining haul roads within the Pinnacle Creek watershed. During the study sources of turbid water and sediment were visibly observed from: sediment ponds associated with mining permits, gravel and dirt roads, and earthen trails and roads which parallel Pinnacle Creek within the riparian zone. Staff also observed events contributing to elevated sediment load in Pinnacle Creek including the short-circuiting of a sediment control structure and ORV use within and across the creek. Additionally, staff visually documented sediment impacts from a permitted mining haul road to a tributary of Pinnacle Creek . . . Four percent of samples collected in the Pinnacle Creek watershed by WVDEP and TSD staff at NPDES outlets associated with coal mining were above the maximum daily limit of settleable solids, while six percent of similarly collected samples in the Clear Fork watershed also exceeded this limit.

*Id.* at 10.

Supplementation of the record is warranted because OSMRE either deliberately or negligently excluded this document that is adverse to its position from the record. *City of Dania Beach,* 628 F.3d at 590. The report was certainly known to OSMRE, since the agency acknowledged that the study was ongoing in its 2021 Budget Justifications and Performance

Information Fiscal Year report.[7] Secondly, the report is directly related to the agency's failure not to take enforcement action against the states to ensure the faithful implementation of Title V of SMCRA and not to reinitiate consultation on the Title V program. Indeed, the study was designed to analyze whether existing regulatory programs were sufficiently protecting the endangered Guyandotte River crayfish's designated critical habitat from coal mining-induced water pollution, which is a central issue in this litigation.[8]

It is also clearly adverse because the report found that the crayfish's critical habitat was being degraded by sedimentation from mining activities; that this sediment was sometimes the result of SMCRA permit violations, and that the agency found that water samples taken from coal mining outfalls discharging into the crayfish's critical habitat regularly exceeded the maximum daily limit of settleable solids. Exh. 5 at 10. Therefore, the study's results speak directly to whether OSMRE has a duty to step in to an enforcement role to compensate for West Virginia's failure to prevent jeopardy to the Guyandotte River crayfish. This deliberately or negligently excluded document could hardly be more relevant to the adjudication of this case and adverse to OSMRE's position than a study designed and implemented by OSMRE to determine the effectiveness of coal mine SSPMs like sediment control measures in protecting endangered aquatic species, which study in fact found that such SSPMs were failing to prevent coal mining water quality violations that harm these species and their habitat. Thus, the record should be supplemented with the study report. *Fund for Animals*, 391 F. Supp. 2d at 198 (describing the

---

[7] See pages 73 and 89 of the document at
https://www.doi.gov/sites/doi.gov/files/uploads/fy2021-budget-justification-osmre.pdf (last visited October 30, 2024).
[8] *Id.*

*prima facie* showing that Plaintiff can make to show an agency improperly excluded adverse information from the record and thus supplementation is warranted).

Furthermore, OSMRE's report will provide the Court with essential background information to help determine whether the agency considered all the relevant factors. The information in these reports that indicates that the design and implementation of SSPMs approved by West Virginia are not effectively protecting listed species from coal mining pollution are highly relevant to whether listed species are being jeopardized, whether OSMRE is ensuring compliance with the 2020 BiOp, and whether the 2020 BiOp is sufficiently protective of listed species. Without this information, the Court cannot determine whether OSMRE considered all of the relevant factors. *City of Dania Beach,* 628 F.3d at 590.

### B. OSMRE's 2023 Annual Evaluation Reports for Kentucky, West Virginia, and Virginia SMCRA Title V Programs

Plaintiffs move to supplement the record with OSMRE's 2023 annual evaluation reports for the Title V programs in Kentucky, West Virginia, and Virginia. These reports are the final product of OSMRE's mandatory annual review of the efficacy of the States' Title V programs, wherein OSMRE analyzes and describes the sufficiency of state regulatory compliance with the requirements of Title V of SMCRA. The only means by which OSMRE's evaluation of delegated state programs' compliance with SMCRA is guaranteed is via the agency's duty to "evaluate the administration of each state program at least annually," 30 C.F.R. § 733.13(a)(1), which requirement results in OSMRE annual evaluation reports of each state's Title V program. As discussed above, the 2020 BiOp clarified that the ultimate duty to oversee and enforce listed species protections in the implementation of state-delegated Title V programs falls on OSMRE, Exh. 1 at 3, and the 2020 BiOp explicitly relied on the effectiveness of this cooperative federalism oversight and enforcement scheme to find that SMCRA permit compliance was

20

assured. *Id.* at 74. The annual evaluation reports are a key component of OSMRE's oversight of state SMCRA programs as envisioned in the 2020 BiOp.

The record lodged by OSMRE contains the annual evaluation reports for Kentucky, West Virginia, and Virginia issued pursuant to 30 C.F.R. § 733.13 for the years 2020, 2021, and 2022, indicating that Defendants concede these reports are pertinent to this litigation. *See* OSMRE_0027375, OSMRE_0028159-500, OSMRE_0029112-205, OSMRE_0029211-330, OSMRE_0029507-702, OSMRE_0029710-814. However, the agency excluded the reports for 2023 (and never provided them to Plaintiffs), asserting they were not finalized until after Plaintiffs' original November 8, 2023, complaint ("Complaint") was filed, ECF No.1, and that it therefore did not consider them.[9] The agency's argument relies on an arbitrary point in time to define the extent of the record, insofar as Plaintiffs filed their First Amended Complaint on March 4, 2024, ECF No. 13, which superseded the 2023 Complaint. *See Simms v. Dist. of Columbia Gov't*, 646 F. Supp. 2d 36, 37-38 (D.D.C. 2009) ("[t]he general rule is that an amended complaint supersedes and replaces an original complaint unless the amendment specifically refers to or adopts an earlier pleading."). Regardless, in litigation such as this over an ongoing violation, the Court's scope of review is not limited to a record at any particular moment in time because no final agency action exists to define the limits of the record. *See Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021) (Even records issued after the lodging of the

---

[9] OSMRE also did not include the same reports for 2024, asserting that as of September 18, 2024, the reports were still in draft form and therefore were predecisional and deliberative. If the reports are still not finalized by the time the agency complies with the Court's order in response to this motion, then Plaintiffs are not moving to supplement the record with these items. However, to the extent that the 2024 reports for any of the three states are in fact finalized as of OSMRE's production of the final version of the record, then supplementation of the record with these materials would be equally appropriate to supplementation with the 2023 reports, and the Court should order OSMRE to act accordingly. *Dallas Safari Club*, 518 F. Supp. 3d at 540.

initial record, such as the 2024 annual evaluation reports, are suitable for inclusion in the final record); *Dallas Safari Club*, 518 F. Supp. 3d at 540.*Chem. Weapons Working Group v. United States DOD*, 2007 U.S. Dist. LEXIS 102547, *5-9 (D.D.C. Mar. 7, 2007). Thus, the decision to exclude the report because it was not filed until after the initial Complaint is entirely spurious.

Regardless—and to the extent Defendants have taken the absurd position that OSMRE did not consider its own mandatory annual reports analyzing state compliance with SMCRA Title V when considering the claims at issue in this litigation—the Court should allow Plaintiffs to supplement the record with the 2023 reports because, as described above, they constitute important "background information [that is] needed 'to determine whether the agency considered all the relevant factors . . .'" *Dania Beach*, 628 F.3d at 590. Indeed, any assertion by the agency that it did not rely on this report provides no grounds for exclusion from the record, since all materials that might have influenced the agency's decision must be included in the record. *City of Duluth*, 968 F. Supp. 2d at 288.

These reports will show any state Title V program problems uncovered by OSMRE's oversight, and thus reveal ongoing harm to habitat for listed species at mines that are directly at issue in this litigation. It is therefore essential for the Court to review OSMRE's annual evaluation reports in order to assess the current scale of compliance problems with these state programs, and thus to show whether the 2020 BiOp is being complied with, and whether listed species have been, and continue to be, jeopardized by coal mining activities that OSMRE is supposed to oversee in order to ensure compliance with the ESA, as the 2020 BiOp requires. Supplementation is therefore warranted.

22

### C. Violation Records for the Pretty Ridge Surface Mine

Plaintiffs seek to supplement the record with various water quality-related violations records for the Pretty Ridge Surface Mine within the watershed of designated critical habitat unit 5f for the endangered candy darter on the South Fork Cherry River. Exh. 6.[10] Coal mining threats to this critical habitat unit are a central focus of the claims set forth in Plaintiffs' First Amended Complaint. ECF No. 13 at ¶117. These records reveal a long-standing pattern of voluminous water quality-related violations resulting from the operation of this mine, as well as the stubborn and persistent refusal of the operator to remedy the violations for many months after WVDEP repeatedly notified the coal company of the compliance problems. Exh. 6. While these documents were provided to Plaintiffs by OSMRE and pertain to the agencies failure to provide the required oversight of the state SMCRA program as the 2020 BiOp requires, OSMRE has asserted to Plaintiffs that it did not consider these documents.

South Fork Coal Company, LLC, the same operator responsible for the Rocky Run mine described in the Complaint, ECF No. 13 at ¶117, not only began mining the Pretty Ridge Surface Mine without even finishing construction of required sediment control structures, Exh. 6 at 1, but the company also continued mining after existing sediment control structures failed, and the company even diverted runoff to avoid sediment control systems. *Id.* The company also was cited for unlawfully dumping mining spoil in the stream management zone and mining outside of its permitted area, among numerous other violations. *Id.* at 10, 8. These violations go directly to whether SMCRA-regulated coal mining is jeopardizing listed species, and whether Defendants are complying with the 2020 BiOp.

---

[10] Plaintiffs obtained these records from OSMRE via a FOIA request.

23

OSMRE, however, has deliberately or negligently excluded from the administrative record these documents that are adverse to its decision not to reinitiate ESA consultation and/or to its decision not to take enforcement action to prevent jeopardy to listed species. *City of Dania Beach,* 628 F.3d at 590. The report was certainly known to OSMRE, as it provided these records to Plaintiffs pursuant to a FOIA request, and they are directly related to the agency's decision not to take enforcement action against the states to ensure the faithful implementation of Title V of SMCRA and not to reinitiate consultation on the Title V program because they concern whether existing regulatory programs are insufficiently protecting the endangered candy darter's designated critical habitat from coal mining-induced water pollution.

They are also adverse to the agency's position because the violations reports reveal that the darter's critical habitat is being degraded by sedimentation from mining activities in the South Fork Cherry River watershed; and that this sediment pollution was the result of SMCRA permit violations. *See, e.g.*, Exh. 6 at 1. Therefore, the reports' contents speak directly to whether OSMRE has a duty to step in to an enforcement role to compensate for West Virginia's failure to prevent jeopardy to the Guyandotte River crayfish. They also speak directly to whether OSMRE should reinitiate consultation on the Title V program. Finally, the report is adverse to OSMRE's decision not to reinitiate consultation or use its enforcement powers to avoid jeopardy, avoid adverse modification, and ensure compliance with Title V, because in both cases, they answer the question in the affirmative. Records of serious water quality violations and flagrant disregard for pollution control measures in the watershed of this critical habitat unit reveal that existing regulatory programs are insufficient to protect the candy darter from jeopardy and adverse modification.

24

The record should also be supplemented with Exhibit 6 because it demonstrates that OSMRE did not consider all of the relevant factors. These violation records show that OSMRE failed to provide sufficient oversight to ensure that listed species were not being harmed by SMCRA-regulated coal mining, as the 2020 BiOp requires, as well as OSMRE's failure to enforce the requirements of the 2020 BiOp where the state has failed to take effective action to protect listed species. Exhibit 6 therefore provides the Court with background information that demonstrates that OSMRE did not consider all of the relevant factors. For these reasons, the Court should supplement the record with Exhibit 6. *City of Dania Beach*, 628 F.3d at 590.

### D. Citizen Complaints to OSMRE regarding Point Lick Surface Mine and Poca #11 Mine

Plaintiffs move to supplement the record with two citizen complaints that were filed with OSMRE regarding new permitting actions for the Point Lick Surface Mine and the Poca No. 11 Mine. Exhs. 7, 8. OSMRE included in the record similar documents, such as the Center's August 11, 2023, complaint to the agency regarding the Wilder Mine in Virginia and its August 17, 2023, complaint to the agency regarding the Rocky Run Surface Mine in West Virginia.[11] These complaints document failures by the States to coordinate with FWS and to properly produce PEPs and SSPMs in accordance with the 2020 BiOp during new permitting actions that post-date the Complaint. However, OSMRE has excluded from the record the Point Lick and Poca #11 complaints with the explanation that they were provided to OSMRE by Plaintiffs after the Complaint in this matter was filed, and that the agency therefore did not consider them. As discussed above, these arguments are misplaced, since the complaints were filed *before* the First

---

[11] *See* OSMRE_0031461-465.

Amended Complaint[12] and in litigation such as this over an ongoing violation, the Court's scope of review is not limited to a record at any particular moment in time because no final agency action exists to define the limits of the record. *See Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021); *Dallas Safari Club*, 518 F. Supp. 3d at 540.*Chem. Weapons Working Group v. United States DOD*, 2007 U.S. Dist. LEXIS 102547, *5-9 (D.D.C. Mar. 7, 2007).

As background: On November 17, 2023—just 9 days after the initial Complaint was filed, ECF No. 1, and well before the First Amended Complaint was filed on March 4, 2024, ECF No. 13—the Center filed a complaint with OSMRE regarding WVDEP's failure to comply with the 2020 BiOp's coordination procedures for a new permitting action for the Point Lick Surface Mine. Exh. 7. This complaint also documents that WVDEP entirely ignored impacts to designated critical habitat for a listed species, the threatened round hickorynut mussel, that is within the zone of impacts of this mine. *Id.* And on December 16, 2023—well before the First Amended Complaint was filed—Appalachian Voices filed a similar complaint with OSMRE and WVDEP regarding the Poca No. 11 Mine. Exh. 8. That complaint documented WVDEP's failure to use its own water quality data from the cooperative OSMRE-WVDEP crayfish and mining water quality study in order to analyze and prepare the permit renewal for Poca No. 11, and the failure of OSMRE to oversee and enforce compliance with SMCRA and the 2020 BiOp.

Because OSMRE contends that it did not consider these citizen complaints submitted directly to it and which pertain to precisely the legal allegations at issue in this litigation, Plaintiffs move to supplement the record with Exhibits 7 and 8. These complaints provide specific information regarding the ongoing failure of OSMRE to comply with the 2020 BiOp,

---

[12] *See Simms v. Dist. of Columbia Gov't*, 646 F. Supp. 2d 36, 37-38 (D.D.C. 2009) ("[t]he general rule is that an amended complaint supersedes and replaces an original complaint unless the amendment specifically refers to or adopts an earlier pleading.").

including by providing the oversight of state SMCRA programs in order to ensure against jeopardy as the 2020 BiOp contemplates, as described in Plaintiffs' First Amended Complaint. ECF No. 13. Supplementation is therefore warranted, as these documents are highly relevant to the Court's adjudication of the present claims.

The Court should order supplementation of the record with Exhibits 7 and 8 because OSMRE deliberately or negligently excluded documents that were adverse to its decision. *City of Dania Beach*, 628 F.3d at 590. The complaints were certainly known to the agency as they were submitted directly to OSMRE on November 17, 2023, and December 16, 2023, respectively. Exhs. 7, 8. And these complaints are directly related to jeopardy to listed species resulting from a failure of the agency to take enforcement action against the states and resulting from the failure to reinitiate consultation on the Title V program at specific mine at issue on this litigation. Therefore, the complaints' contents speak directly to whether OSMRE has a duty to step in to an enforcement role to compensate for West Virginia's failure to prevent jeopardy to listed species such as the candy darter and round hickorynut mussel. They also speak directly to whether OSMRE should reinitiate consultation on the Title V program. Finally, the complaints are adverse to OSMRE's failure to reinitiate consultation or use its enforcement powers to ensure compliance with Title V, because in both cases, they answer the question in the affirmative. Thus, the record should be supplemented with the study report. *Fund for Animals*, 391 F. Supp. 2d at 198 (describing the *prima facie* showing that Plaintiff can make to show an agency improperly excluded adverse information from the record and thus supplementation is warranted).

Furthermore, these complaints provide the Court with important background information that demonstrates that OSMRE did not consider all of the relevant factors in its overview of State

SMCRA program compliance with the 2020 BiOp and the ESA. If OSMRE does not review reports of violations of the 2020 BiOp and the Title V program, the agency is not considering the factors it must assess in order to determine whether to intervene with enforcement action or reinitiate consultation with FWS on the Title V program. Therefore, the Court should supplement the record with Exhibits 7 and 8. *City of Dania Beach*, 628 F.3d at 590.

### E. Plaintiff's Complaint to OSMRE Regarding South Fork Cherry River Haulroad #2

Plaintiffs move to supplement the record with Plaintiffs' December 8, 2023, complaint to OSMRE regarding noncompliance with the 2020 BiOp and water quality violations due to the operation of Haulroad #2 in the candy darter's critical habitat on the South Fork Cherry River, along the attachments to that complaint. *See* Exhs. 9, 10. This complaint documents noncompliance with the coordination, PEP and SSPM requirements of the 2020 BiOp, as well as ongoing toxic pollution of the watershed by the operator as a result of the use of the SMCRA-permitted road. *Id.* As such, this complaint brings into sharper focus the significant threats that the failure to comply with the 2020 BiOp poses to the critical habitat of the highly endangered candy darter. The ongoing harms documented in the complaint show that critical habitat for this species is imperiled by SMCRA-permitted coal mining facilities due to OSMRE's failure to enforce the 2020 BiOp against the States and thereby ensure against jeopardy. The 2020 BiOp's ineffectiveness in preventing harm to listed species and their critical habitat, in turn, is highly relevant to the question of whether OSMRE should reinitiate consultation with FWS in order to prevent jeopardy to listed species in harm's way of coal mines.

OSMRE has asserted to Plaintiffs that the agency did not consider this complaint because it was filed with the agency after the filing of Plaintiffs' original Complaint. ECF No. 1. This

28

argument is unavailing since the complaint was filed *before* the First Amended Complaint,[13] and in litigation such as this over an ongoing violation, the Court's scope of review is not limited to a record at any particular moment in time because no final agency action exists to define the limits of the record. *See Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021); *Dallas Safari Club*, 518 F. Supp. 3d at 540.*Chem. Weapons Working Group v. United States DOD*, 2007 U.S. Dist. LEXIS 102547, *5-9 (D.D.C. Mar. 7, 2007).

Nonetheless, Plaintiffs move to supplement the record with Exhibits 9 and 10. These documents provide specific information regarding the ongoing failure of OSMRE to comply with the 2020 BiOp and demonstrate the ongoing nature of the breakdown of the 2020 BiOp's regulatory scheme, as described in Plaintiffs' First Amended Complaint. ECF No. 13 ¶¶102-125. Supplementation is therefore warranted, as the agency deliberately or negligently excluded these documents that are adverse to its decision. *City of Dania Beach*, 628 F.3d at 590.

The complaint and its attachments were certainly known to OSMRE, since the documents were submitted directly to OSMRE on December 8, 2023. Exhs. 9 and 10. Secondly, the complaint is directly related to OSMRE's contested duties in this case, including jeopardy to listed species resulting from a failure of the agency to take enforcement action against the states and resulting from the failure to reinitiate consultation on the Title V program. Therefore, the complaint's contents speak directly to whether OSMRE has a duty to step in to an enforcement role to compensate for West Virginia's failure to prevent jeopardy to listed species such as the candy darter. They also speak directly to whether OSMRE should reinitiate consultation on the Title V program. Finally, the report is adverse to OSMRE's failure to reinitiate consultation or

---

[13] *See Simms v. Dist. of Columbia Gov't*, 646 F. Supp. 2d 36, 37-38 (D.D.C. 2009) ("[t]he general rule is that an amended complaint supersedes and replaces an original complaint unless the amendment specifically refers to or adopts an earlier pleading.").

use its enforcement powers to ensure compliance with Title V, because in both cases, they answer the question in the affirmative. Thus, the record should be supplemented with the study report. *Fund for Animals*, 391 F. Supp. 2d at 198 (describing the *prima facie* showing that Plaintiff can make to show an agency improperly excluded adverse information from the record and thus supplementation is warranted).

Furthermore, the complaint and its attachments provide the Court with background information that demonstrates that OSMRE did not consider all of the relevant factors in its overview of State SMCRA program compliance with the 2020 BiOp and the ESA. They demonstrate a breakdown in the 2020 BiOp's regulatory scheme to avoid jeopardy and were submitted directly to OSMRE, so they certainly must be considered in the context of OSMRE's role to avoid jeopardy and reinitiate consultation. Because OSMRE asserts that it did not consider this vital information, the Court should supplement the record with Exhibits 9 and 10. *City of Dania Beach*, 628 F.3d at 590.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order OSMRE to complete and/or supplement the administrative record.

DATED: October 31, 2024                   Respectfully Submitted,

*/s/ Perrin W. de Jong*
Perrin W. de Jong (admitted *pro hac vice*)
Center for Biological Diversity
P.O. Box 6414
Asheville, NC 28816
Phone: (828) 252-4646
Email: perrin@biologicaldiversity.org

Jared M. Margolis (admitted *pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171

30

Eugene, OR 97405
Phone: (802) 310-4054
Email: jmargolis@biologicaldiversity.org

Hannah Connor (DC Bar #1014143)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 681-1676
Email: hconnor@biologicaldiversity.org

*Attorneys for Plaintiffs*