**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | Civil Case No.: 1:23-cv-03343-SLS |
| v. | ) ) ) | |
| U.S. OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
PLAINTIFFS' EXTRA RECORD DECLARATIONS AND EXHIBITS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.     Plaintiffs' Standing Declarations and Extra-Record Exhibits do not Violate the Court's Prior Order. ................................................................................................................. 1

II.    ESA Citizen Suit Claims are not Limited to the Administrative Record. ........................... 2

III.   There is no Reason to Strike Anything from Plaintiffs' Declarations or the Motion for Summary Judgment. ...................................................................................................... 10

      A.   Dodson Declaration (Dkt. No. 42-2) ........................................................................... 13

      B.   Curry Declaration (Dkt. No. 42-6) .............................................................................. 17

      C.   Thoma Declaration (Dkt. No. 42-7) ............................................................................ 20

      D.   Young Declaration (Dkt. No. 42-8). ............................................................................ 20

      E.   Sneed Declaration (Dkt. No. 42-9). ............................................................................ 22

      F.   Hepler Declaration (Dkt. No. 42-10). ....................................................................... 222

CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Al-Aulaqi v. Panetta*,
   35 F. Supp. 3d 56 (D.D.C. 2014) ..................................................................................... 15

*All. for the Wild Rockies v. Johnson*,
   No. CV 25-136-M-DLC, 2026 WL 381879 (D. Mont. Feb. 11, 2026) .................................. 10

*Asarco, Inc. v. EPA,*
   616 F.2d 1155 (9th Cir. 1980) ........................................................................................ 10

*Bennett vs. Spear,*
   520 U.S. 154 (1997) ............................................................................................... 3, 7, 8

*Cabinet Mountains Wilderness v. Peterson,*
   685 F.2d 678 (D.C. Cir. 1982) .......................................................................................... 5

*Chattooga Conservancy v. U.S. Dep't of Agric.*,
   No. 24-518 (TJK), 2026 WL 865760 (D.D.C. Mar. 30, 2026) ............................................11

*Conservation Cong. v. Finley*,
   No. C 11-04752 SC (LB), 2012 WL 1564946 (N.D. Cal. May 2, 2012) .................................. 4

*Conservation Cong. v. U.S. Forest Serv.*,
   No. 2:16-cv-00864-MCE-AC, 2017 WL 4340254 ............................................................ 4, 9

*Covad Commc'ns Co. v. Bell Atl. Co.*,
   407 F.3d 1220 (D.C. Cir. 2005) ...................................................................................... 15

*Ctr. for Biological Diversity v. Ross,*
   349 F. Supp. 3d 38 (D.D.C. 2018) ......................................................................... 4, 5, 6, 7

*Defs. of Wildlife v. Martin*,
   454 F. Supp. 2d 1085 (E.D. Wash. 2006) ........................................................................... 4

*Ellis v. Housenger*,
   No. C-13-1266 MMC, 2015 WL 3660079 (N.D. Cal. June 12, 2015) ..................................... 4

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989) .................................................................................. 15, 16

*Hamilton v. Paulson,* 542 F. Supp. 2d 37 (D.D.C. 2008),
   *rev'd on other grounds,* 666 F.3d 1344, 399 U.S. App. D.C. 77 (D.C. Cir. 2012) ................... 15

*Indigenous Env't Network v. U.S. Dep't of State*
   No. CV 17-29/31-GF-BMM, 2017 WL 9280323 (D. Mont. Dec. 12, 2017) ............................ 8

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
   681 F.3d 1006 (9th Cir. 2012) .......................................................................................... 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................................11

*Nat'l Family Farm Coal. v. EPA*,
   966 F.3d 893 (9th Cir. 2020) ............................................................................................ 9

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*,
   992 F. Supp. 2d 1095 (D. Or. 2014).......................................................................... 5

*Nw. Coal. v. EPA*,
   920 F. Supp. 2d 1168 (W.D. Wash. 2013)................................................................. 9

*Nw. Env't Advocs. v. EPA*,
   No. 3:21-cv-01136-HZ, 2022 WL 15331465 (D. Or. Oct. 24, 2022) ......................... 5

*Oceana, Inc. v. Ross*,
   454 F. Supp. 3d 62 (D.D.C. 2020) .......................................................................... 16

*Or. Nat. Desert Ass'n v. Kimbell*,
   593 F. Supp. 2d 1217 (D. Or. 2009)....................................................................... 4, 6

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007) ...............................................................................11

*Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*,
   605 F. Supp. 3d 28 (D.D.C. 2022) ...........................................................................11

*Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*,
   210 F. Supp. 3d 796 (E.D.N.C. 2016)..................................................................... 3, 8

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014)................................................................................ 9, 10

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014)..................................................................................... 9

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) .................................................................................11

*W. Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) ...................................................... 3, 4, 5, 8,9, 10

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
   89 F.3d 897 (D.C. Cir. 1996) .................................................................................. 15

*Wash. Toxics Coal. v. EPA*,
   413 F.3d 1024 (9th Cir. 2005).......................................................................... 3, 4, 8

*Wild Fish Conservancy v. Nat'l Park Serv.*,
   No. C12-5109 BHS, 2012 WL 5384896 (W.D. Wash. Nov. 1, 2012) ........................ 4

*WildEarth Guardians v. Jeffries*,
   370 F. Supp. 3d 1208 (D. Or. 2019)........................................................................... 5

*Willamette Riverkeeper v. Nat'l Marine Fisheries Serv.*,
   No. 6:21-cv-00034-AA, 2023 WL 4173893 (D. Or. June 26, 2023)........................... 8

*Yurok Tribe v. U.S. Bureau of Reclamation*,
   231 F. Supp. 3d 450 (N.D. Cal. 2017) ...................................................................... 4

**Rules**

Fed. R. Evid. 201 ............................................................................................................. 2

Fed. R. Evid. 701 ......................................................................................................... 14, 21

**Federal Register**

80 Fed. Reg. 18710 (Apr. 7, 2015) .................................................................................... 19

## **INTRODUCTION**

Defendants have moved to strike portions of Plaintiffs' standing declarations, as well as exhibits that were provided with those declarations. Much of what they seek to strike pertains to standing and was not offered as extra-record evidence or in support of any merits argument. And the extra-record exhibits were provided as background to show Surface Mining Control and Reclamation Act ("SMCRA") permit violations at several of the mines that were included in Plaintiffs' ESA notice letter to Defendants, confirming that these mines certainly "may affect" listed species. Defendants' arguments that the Court should disregard these highly probative materials are baseless. The Court may consider extra-record evidence here, including the permit violation information, because the Endangered Species Act ("ESA") citizen-suit claims at issue (Claims I and II) are not limited to the administrative record. The Court may also take judicial notice of such information, as it was obtained from a State's permit database and therefore its accuracy cannot be reasonably questioned. There is simply no valid reason for the Court to disregard basic standing allegations or background information demonstrating that Defendants failed to properly implement the 2020 BiOp and that listed species are thereby being jeopardized in violation of the ESA.[1]

## **ARGUMENT**

### I.    **Plaintiffs' Standing Declarations and Extra-Record Exhibits do not Violate the Court's Prior Order.**

Defendants argue that Plaintiffs have provided extra-record materials in violation of the Court's May 27, 2025, Order (Dkt. No. 34) on Plaintiffs' motion to complete and supplement the

---

[1] In their opening summary judgment brief and reply, Plaintiffs do not rely on the extra-record material at all with regard to the merits of Count III. Accordingly, if the Court sustains Plaintiffs' position as to that claim and, on that basis, finds it unnecessary to rule on Counts I and II, the Court need not resolve this motion.

administrative record. Def. Mot. at 1, Dkt. No. 44. Not so. The Court did not rule that the declarations and exhibits at issue could not be considered in summary judgment briefing. Rather, while the Court found that review of Administrative Procedure Act ("APA") claims should generally be based on the administrative record, it expressly declined to issue a ruling as to whether ESA citizen-suit claims are limited to the record; nor did it rule that the Court could not take judicial notice of certain facts pursuant to Federal Rule of Evidence 201. *See* Memorandum Opinion at 39, Dkt. No. 33 ("The Parties spill much ink debating whether the Plaintiffs' ESA citizen suit claims should be limited to the administrative record … But that has nothing to do with the question of whether certain documents should be included in or added to the administrative record. *And that is the only question presented by the Plaintiffs' motion*.") (emphasis added). Thus, Defendants' contention that Plaintiffs have violated the Court's order or that the Court somehow foreclosed Plaintiffs' argument that the materials at issue may be relied on in summary judgment briefing is disingenuous at best.

As discussed further below, most of the statements that Defendants take issue with are specific to Plaintiffs' standing and are not, in fact, extra-record evidence at all. And the few extra-record materials that were included—materials the Court may take judicial notice of—are only intended to provide background to inform the Court's review of the ESA citizen-suit arguments related to Claims I and II. Since review of the ESA citizen suit claims at issue is not limited to the record, there is no basis for striking these probative materials.

## II.    ESA Citizen Suit Claims are not Limited to the Administrative Record.

Defendants' arguments regarding the scope of review for Plaintiffs' ESA citizen suit claims are erroneous. Plaintiffs have not contended (implicitly or otherwise) that the claims at issue are subject to *de novo* review, Def. Mot. at 7-8, but only that Plaintiffs' ESA citizen suit claims are not subject to the APA's record limitation rule. Indeed, there is no Circuit precedent

2

that establishes that Plaintiffs may not provide the Court with extra-record information for a very narrow purpose—*i.e.,* to support Plaintiffs' claims that the action agency is obligated to reinitiate consultation and failed to ensure against jeopardy, which are indisputably ESA citizen suit claims under *Bennett vs. Spear,* 520 U.S. 154 (1997), and, therefore, not subject to the scope of review limitations of the APA.

Here, Plaintiffs' First Claim (that the Office of Surface Mining Reclamation and Enforcement ("OSM") failed to reinitiate Section 7 consultation), and Second Claim (that OSM is failing to insure against jeopardy), are ESA citizen suit claims rather than APA claims. *See Bennett*, 520 U.S. 154. In *Bennett*, the Supreme Court expressly held that challenges to the U.S. Fish and Wildlife Service's ("FWS") *issuance* of a biological opinion is an APA claim, whereas challenges to an action agency's noncompliance with ESA Section 7 falls squarely within the ESA citizen suit provision. *Id.* at 173-75. Although the ESA borrows the APA's *standard* of review (*i.e.,* the arbitrary and capricious standard)—because the ESA does not specify such a standard—it is well-settled that ESA citizen suit claims are not APA claims and, therefore, are not subject to the APA's *scope* of review. They are, thus, not strictly limited to the administrative record that applies to the review of APA claims. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (holding that the court "may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim"); *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."); *see also Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796, 801 (E.D.N.C. 2016) (same).

Especially where, as here, an ESA citizen suit claim asserts an ongoing failure to comply with a nondiscretionary duty imposed by the Act, these precedents establish the general rule that

3

such claims are not limited to an administrative record, in contrast to claims reviewed under the APA. *See, e.g., Ctr. for Biological Diversity v. Ross,* 349 F. Supp. 3d 38, 45 (D.D.C. 2018) (holding that claims regarding ongoing violations of the ESA are not limited to the record) (citing *Kraayenbrink,* 632 F.3d at 497-98); *Conservation Cong. v. U.S. Forest Serv.*, No. 2:16-cv-00864-MCE-AC, 2017 WL 4340254, at *2 (E.D. Cal. Sep. 28, 2017) (holding that "the scope of the Court's review in the context of claims brought under the ESA's substantive citizen suit provision [] must not be limited by the APA's record review rule") (citing *Wash. Toxics Coal.,* 413 F.3d at 1030, 1034, and *Kraayenbrink*, 632 F.3d at 497); *Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 467-69 (N.D. Cal. 2017) (same); *Ellis v. Housenger*, No. C-13-1266 MMC, 2015 WL 3660079, at *3-4 (N.D. Cal. June 12, 2015) ("In sum, where a claim is brought under [the ESA's citizen suit provision], the district court 'borrow[s] . . . the *standard* [of review] from the APA,' but does 'not similarly borrow[ ] the APA's *scope* of review.'") (citations omitted); *Defs. of Wildlife v. Martin*, 454 F. Supp. 2d 1085, 1094 (E.D. Wash. 2006) (holding that, where a claim arises under the citizen suit provision of the ESA, a court shall consider evidence outside the administrative record).

Applying this rule, many district courts have allowed discovery and/or the admission of extra-record evidence when reviewing ESA citizen suit claims, such as the one at issue here.[2] This includes situations when an agency has compiled a record setting forth the materials the

---

[2] *See, e.g., Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-5109 BHS, 2012 WL 5384896, at *1 (W.D. Wash. Nov. 1, 2012) (confirming that parties may obtain discovery and the court may consider extra-record evidence in ESA citizen suits); *Conservation Cong. v. Finley*, No. C 11-04752 SC (LB), 2012 WL 1564946, at *1 (N.D. Cal. May 2, 2012) (denying defendants' request to bar discovery because the claims at issue "were brought pursuant to the citizen-suit provisions of the [ESA] and, thus, are not subject to the administrative-record limitation"); *Or. Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1217, 1219-20 (D. Or. 2009) (allowing plaintiffs to introduce evidence, including expert reports and evidence obtained through discovery, to prove their ESA citizen suit claims).

4

agency purportedly relied on. *See, e.g., Ross,* 349 F. Supp. 3d at 45; *Kraayenbrink*, 632 F.3d at 497.[3]

Defendants' argument that Plaintiffs' ESA citizen suit claims should nonetheless be limited to the record here relies on the D.C. Circuit decision in *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d 678 (D.C. Cir. 1982). Def. Mot. at 1, 7-8. However, *Cabinet Mountains* does not hold that a court resolving an ESA citizen suit claim is confined to the record. Rather, as explained by Chief Judge Boasberg in a recent decision allowing plaintiffs to go outside the agency's self-selected record, *Cabinet Mountains* only addressed the "standard of review" to be applied to ESA claims:

> The Court acknowledges that the language in *Cabinet Mountains* is fairly sweeping and, at first glance, may seem to stand for the principle that all ESA suits must be considered under the APA standards for review. A closer analysis of the case, however, reveals that it is not quite so broad a holding. First, as Plaintiffs note, the district court in *Cabinet Mountains* in fact specifically did <u>not</u> address whether it could consider documents plaintiffs in that case wanted to introduce because the materials were "cumulative of evidence that was considered in the administrative proceedings" and were therefore already in the record. *See Cabinet Mountains Wilderness v. Peterson*, 510 F. Supp. 1186, 1189 n.2 (D.D.C. 1981). As this determination indicates, the case did not squarely present the issue of the availability of discovery (or lack thereof) on appeal. Rather, the Circuit was concerned with the appropriate <u>standard</u> of review to be applied — a concept distinct from the question of the permissible <u>scope</u> of the record before the district court.

*Ross,* 349 F. Supp. at 44-45 (emphasis in original) (citing *Kraayenbrink*, 632 F.3d at 497-98). In short, *Cabinet Mountains* does *not* stand for the general proposition that ESA cases are limited to the record, as Defendants assert, but merely confirms that the APA's standard of review applies to ESA claims.

---

[3] *See also Nw. Env't Advocs. v. EPA*, No. 3:21-cv-01136-HZ, 2022 WL 15331465, *4 (D. Or. Oct. 24, 2022); *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208, 1227 (D. Or. 2019; *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, 992 F. Supp. 2d 1095, 1106 (D. Or. 2014).

And while Defendants attempt to distinguish *Ross*, it is directly on point and confirms that the ESA citizen suit claims at issue here are not limited to the record. Defendants rely on the statement in *Ross* where the court stated that "[t]o the extent that Plaintiffs assert that all citizen-suit ESA cases may involve materials outside the administrative record, Defendants are correct that *this is not so*—at least in this Circuit." Def. Mot. at 10. But that is a misleading characterization of the *Ross* decision as it applies to this case. Rather, in *Ross*, Judge Boasberg allowed extra-record evidence because the Section 7(a)(2) claim did not "revolve around the jeopardy caused by a prior agency determination," but rather, as here, "an assertion that . . . . defendants are <u>now</u> violating § 7 of the ESA" on an ongoing basis. *Id.* at 45 (emphasis in original).

Plaintiffs' Claims I and II present the very same situation as in *Ross*, where "[u]nlike in *Cabinet Mountains*, [] the relief at issue is not the propriety of a prior government act, but the enjoining or modification of the agency's ongoing administration of its oversight with respect to an endangered species." *Ross,* 349 F. Supp. at 45-46. That is precisely what Plaintiffs seek here regarding OSM's *ongoing* failure to provide the oversight that the 2020 BiOp requires to ensure against jeopardy and its failure to reinitiate Section 7 consultation. *See* First Amended Complaint at 47-49, 52, Dkt. No. 13 (seeking to "enjoin any further reliance on the 2020 BiOp" because OSMRE has "fail[ed] to provide oversight … required by the 2020 BiOp" and therefore failed to ensure against jeopardy as the ESA requires).[4]

---

[4] As in *Ross*, the request for injunctive relief here requires Plaintiffs to show whether there is a definitive threat to listed species "under Defendants' current administration of their agency policies and past actions." *Ross,* 349 F. Supp. at 45. "[C]onfining the record to past agency determinations is far less appropriate when plaintiffs seek an injunction based on present-day agency actions and the risk of future harm." *Id.* at 46 (citing *Or. Nat. Desert Ass'n*, 593 F. Supp. 2d at 1219 (finding that magistrate judge did not err in holding that plaintiffs' § 7 claim

Thus, as in *Ross*, Plaintiffs' Claims I and II concern "the agency 'violating [its] ongoing obligation under ESA Section 7(a)(2)' after the issuance of [the Biological Opinion]" by "continuing to allow" activities that cause harm and not reinitiating consultation to address the inability to comply with the BiOp. *Ross,* 349 F. Supp. at 45. And because Plaintiffs' claims concern OSM's failure to provide oversight, it is axiomatic that the record will not contain the evidence of harm to listed species that OSM failed to consider in its oversight role, which Plaintiffs may show the Court in order to support their claim. Therefore, "the relevant information needed to determine whether there is ongoing and future jeopardy" must allow for reviewing extra-record evidence. *Id.* By the same token, Defendants' arguments regarding limiting this case to the record would unduly prejudice Plaintiffs since they "do not obviate Plaintiffs' right to an opportunity to develop information necessary to prove their claim." *Id.* at 44-45 ("The Court agrees that, in a § 7 case alleging ongoing and prospective violations of the ESA, the administrative record may well be insufficient to resolve the relevant claims.").

This is sufficient to demonstrate that *Cabinet Mountain* does not foreclose consideration of extra-record evidence for the limited purpose that Plaintiffs seek to use it here. But it is also significant that *Cabinet Mountain* was decided in 1982, predating the Supreme Court's 1997 decision in *Bennett*. As explained, that ruling distinguished between ESA and APA claims and held that Plaintiffs' ESA Section 7 claims against OSM were *not* brought under the APA but rather under the ESA citizen-suit provision, *Bennett*, 520 U.S. at 164, 173-75, which formed the basis for subsequent case law establishing that ESA citizen-suit claims are *not* subject to the

---

supported "introduc[ing] evidence obtained after administrative decisions were issued," as "extra-record evidence is necessary for plaintiffs to meet the burden of proof required for obtaining injunctive relief pursuant to the ESA citizen-suit provision.'")).

record limitation rule. *See Kraayenbrink*, 632 F.3d at 495-496 ("Because Plaintiffs'[] claim is available under the ESA, this court looks to the ESA and not to the APA.") (citing *Bennett*, 520 U.S. at 164); *Wash. Toxics Coal.*, 413 F.3d at 1034 ("Plaintiffs' suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA."); *Red Wolf Coal.*, 210 F. Supp. 3d at 801 (noting that ESA claims are not APA claims pursuant to *Bennett*, and holding that "because the citizen suit provision of the ESA provides an independent basis for a private right of action, a sufficient avenue of review exists and a plaintiffs claims need not proceed under the APA").

Defendants ignore the extensive body of case law that has been decided since *Bennett* holding that ESA claims are not limited to the record. *See, e.g., Indigenous Env't Network v. U.S. Dep't of State*, No. CV 17-29/31-GF-BMM, 2017 WL 9280323, at *1 (D. Mont. Dec. 12, 2017) ("The APA provides the standard of review for the ESA, but does not dictate the scope of judicial review. The Ninth Circuit has determined that ESA citizen-suit claims, unlike claims reviewed under the APA, are not limited to the administrative record."). While the D.C. Circuit has not addressed this issue since the Supreme Court's decision in *Bennett*, courts in the Ninth Circuit have done so in several cases, and recent decisions have continued to find that ESA citizen suit claims are not limited to the record. For example, in *Willamette Riverkeeper v. National Marine Fisheries Service*, the court found that "for purposes of Plaintiffs' claims under the ESA citizen suit provision, the Court's review is not limited to the administrative record." No. 6:21-cv-00034-AA, 2023 WL 4173893, at *3 (D. Or. June 26, 2023). The court based this determination on a review of pertinent cases, all of which post-date *Bennett*. *See id.* Thus, in view of Chief Judge Boasberg's ruling in *Ross*, along with a vast body of case law developed since *Cabinet Mountains*, it is now well-established that ESA citizen-suit claims of the kind that Plaintiffs are

8

pursuing against OSM for failure to carry out its ongoing obligations under ESA Section 7 are not limited to only the "record" that the government prefers to make available for judicial review. Rather, other relevant materials can be considered by the Court in ruling on such claims.

Furthermore, Defendants' argument—in reliance on *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012)—that *Kraayenbrink* does not actually stand for the proposition that ESA citizen suit claims may rely on material outside any administrative record, Def. Mot. at 11-12, has already been rejected in several cases that considered the same argument. Many courts have ruled, following *Karuk Tribe*, that pursuant to *Kraayenbrink*, ESA citizen-suit claims are not limited to the record. As the court noted in *Northwest Coalition v. EPA*, "*Karuk Tribe* cannot reasonably be read to implicitly or silently overrule the Ninth Circuit's reasoned holdings that, in circumstances where a plaintiff challenges a federal agency's failure to act under the citizen suit provision of the ESA, review is not confined to an administrative record" given that *Karuk Tribe* includes "no discussion of or citation to *Washington Toxics* or *Kraayenbrink.*" 920 F. Supp. 2d 1168, 1174 (W.D. Wash. 2013); *see also Conservation Cong.*, 2017 WL 4340254, at *2. Moreover, the Ninth Circuit itself recently reaffirmed (following *Karuk Tribe*) that courts may consider reports outside the administrative record "for the limited purpose[] of reviewing [] ESA claim[s]." *Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 926 n.11 (9th Cir. 2020) (citing *Kraayenbrink*, 632 F.3d at 497).[5] And a recent decision from a court that had

---

[5] That clear statement from the Ninth Circuit post-dates the cases Defendants rely on to suggest that the Ninth Circuit has ruled that ESA cases are limited to the record. *See* Def. Mot. at 11-12 (citing *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-04 (9th Cir. 2014); *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991-96, 999-1000 (9th Cir. 2014)). Furthermore, those cases do not actually hold that review of ESA citizen suits is limited to the record. For example, the court in *Jewell* was merely discussing the propriety of the lower court allowing the parties to submit competing expert reports when the court itself had already appointed experts help explain how the BiOp worked. The court found that relying on such extensive scientific inquiry led the district court to substitute its judgement for that of the agency.

previously held that ESA citizen suits claims are limited to the record concluded that "in the time since [the prior case] was decided, it appears that the weight of authority … leans heavily in favor of permitting some amount of extra-record evidence in ESA citizen-suit claims." *All. for the Wild Rockies v. Johnson*, No. CV 25-136-M-DLC, 2026 WL 381879, at *5 (D. Mont. Feb. 11, 2026).

Therefore, Plaintiffs' ESA citizen suit claims asserting ongoing violations of mandatory duties under Section 7 are not limited to the administrative record. The Court may thus consider the extra-record evidence that Plaintiffs provided, which shows violations of SMCRA permits at several of the mines notices by Plaintiffs that did not follow the requirements of the 2020 BiOp and/or did not undertake the technical assistance "coordination" process, and are therefore clearly jeopardizing listed species in violation of the ESA.

### III.    There is no Reason to Strike Anything from Plaintiffs' Declarations or the Motion for Summary Judgment.

Most of what Defendants appear to take issue with in Plaintiffs' standing declarations, which were properly provided to support standing and not as extra-record evidence or argument, are statements about how the 2020 BiOp is intended to function, how the ESA is intended to protect listed species, and the impacts of coal mining on those species. Since these statements were specifically based on the declarants' knowledge and opinion and only show their understanding of matters pertinent to their standing—and were not relied on in Plaintiffs' brief to support any factual underpinnings for Plaintiffs' claims—there is no basis for striking them.

---

*Jewell*, 747 F.3d at 604 (citing *Asarco, Inc. v. EPA,* 616 F.2d 1155, 1160-61 (9th Cir. 1980)). But the court in that case, as well as in *Jewell,* did allow extra-record testimony, including from experts who provided "background material." *Id*. Therefore, Defendants are wrong to suggest that the Ninth Circuit has ruled that ESA citizen suit cases are limited to the record, as the Court made clear in *National Family Farm Coalition.*

To establish standing, a plaintiff must show (1) "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that the injury is "fairly . . . traceable to the challenged action of the defendant . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation omitted). At the summary judgment stage, the plaintiff "must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true." *Id*. (internal quotation omitted).

Here, Defendants have confusingly taken issue with statements that are clearly specific to establishing Plaintiffs' standing and do not provide extra-record evidence at all. In order to show that members of Plaintiffs' organizations have suffered an injury in fact, those member standing declarants must set forth facts showing that their interests are being harmed by Defendants' failure to comply with the 2020 BiOp and the ESA, which in this instance means demonstrating harm to their concrete interests in observing, protecting, conserving, and studying affected wildlife. That would include information, based on their knowledge, of the status and threats to those species from SMCRA-regulated coal mining activities. *See Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) ("Under our precedents, 'a petitioner whose standing is not self-evident should establish its standing by the submission of its arguments *and any affidavits or other evidence appurtenant thereto* at the first appropriate point in the review proceeding.'") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)) (emphasis added). And Plaintiffs may go outside the administrative record to establish standing. *See Chattooga Conservancy v. U.S. Dep't of Agric.*, No. 24-518 (TJK), 2026 WL 865760, at *5, fn. 3 (D.D.C. Mar. 30, 2026) ("The Court may consider materials beyond the administrative record to assess standing, because standing implicates the Court's subject-matter jurisdiction.") (citing *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 38 (D.D.C. 2022)).

11

Further, to show the causal connection between the injury and the conduct, and that the injury is fairly traceable to the Defendants' actions and can be redressed by the Court, the Plaintiffs' member standing declarants properly provided their understanding of how the ESA and the 2020 BiOp are intended to protect their interests, and how Defendants' violations of the 2020 BiOp, therefore, cause them harm. In sum, because these statements are not provided as extra-record evidence or argument in violation of the page limits, but merely to support standing, there is simply no basis for striking such statements just because Defendants have erroneously labelled them as "extra-record evidence."[6]

Since Plaintiffs are not relying on these statements as evidence but rather for standing, it is of no consequence that Plaintiffs' standing declarants have not been certified as experts, *contra* Def. Mot. at 15, 17, 18, 19, since they have not provided extra-record expert testimony. Plaintiffs' summary judgment briefing does not rely on the factual information provided in the standing declarations regarding the status of or harm to listed crayfish, or with regards to how the ESA and the 2020 BiOp are intended to function. Rather, Plaintiffs relied on the record evidence regarding harm to listed species and the plain language of the 2020 BiOp, the ESA, and the ESA implementing regulations to support their arguments.

It is also notable that Defendants have not even argued that any of the statements contained in Plaintiffs' standing declarations regarding the ESA, the 2020 BiOp, or impacts to

---

[6] Defendants' contention that Plaintiffs' declarations are "in essence, additional argument that violates the page limits of Local Rule 7(e)," Def. Mot. at 14, 15, 18, 19, 20, is entirely misplaced. Plaintiffs did not incorporate the declarations by reference into their arguments or rely on any of the statements made in the declarations that summarized the ESA violations at issue to support the arguments in their summary judgment brief. The declarations merely summarize those arguments, but only in the context of establishing standing—i.e., showing that the violations at issue are causing harm to the declarant's interests. Providing that type of background information and summarizing the issues at hand is routine in standing declarations and does not render those statements as additional argument.

listed species are incorrect. In fact, all such statements are consistent with the plain language of the ESA and the BiOp, as well as the information in the record regarding the imperiled status of the crayfish species at issue. It is Defendants' motion that is therefore an unwarranted "waste" of the parties' and the Court's time, Def. Mot. at 2, rather than Plaintiffs providing routine information in declarations to support standing.

Therefore, as a general matter, Defendants' attempt to strike statements that go to Plaintiffs' standing from their declarations is unwarranted; however, as discussed below, such arguments are even more baseless in view of the specific statements they seek to strike.

### A. Dodson Declaration (Dkt. No. 42-2).

As discussed above, much of what Defendants move to strike from the Dodson declaration pertains to standing and does not constitute extra-record evidence or additional legal argument. Defendants' arguments regarding the applicability of the rules of evidence and page limitations of the local rules are, therefore, entirely inapposite. Def. Mot. at 12-14. Paragraphs 14-16, 21, 24, 42-43, 46, 49, and 50-51 of the Dodson declaration merely discuss Mr. Dodson's work researching, sampling waters, and protecting species affected by SMCRA-regulated coal mining, his specific interests in listed crayfish and the threats to those species from coal mining activities, and his understanding of how the 2020 BiOp and the ESA are intended to protect his interest and, therefore, how Defendant's violations at issue in this litigation impact those interests. These statements all clearly go to standing and were not provided as extra-record evidence on the merits, which should be apparent because Plaintiffs did not rely on any of those statements in their summary judgment arguments. Defendants have also not claimed that any of these statements are false or misleading. There is simply no reason to strike basic information from a declaration that goes to establishing the elements of standing.

13

It is also evident that Plaintiffs may (indeed, generally, must) go outside any record to establish standing, since the record will not contain information specific to the individual seeking standing, such as their specific interests and an explanation of how those interests are being adversely affected. Therefore, the Dodson declaration properly provided specific facts regarding his work to protect wildlife from the impacts of coal mining, as well as the status of and impacts to listed crayfish that he has an interest in, to support his standing. None of this information constitutes extra-record expert testimony, and Defendants' arguments regarding such statements being inadmissible under Federal Rule of Evidence 701 are, therefore, inapposite.[7] Defendants' efforts to strike these statements pertaining to standing properly made in a standing declaration are an unwarranted waste of the parties' and the Court's time.

Defendants also ask that the Court strike paragraphs 28-43 of the Dodson declaration, which explain the process that Plaintiffs used to identify mines that were operating in violation of the 2020 BiOp and discuss some examples of those mines, and also explain how Defendants' failure to properly implement the 2020 BiOp for those mines harms Mr. Dodson's interests. But this information is pertinent to Mr. Dodson's standing, as it establishes his concrete interests and how they are being harmed by Defendants. It is also relevant background information to explain how Plaintiffs developed the list of mines at issue.

Regarding the examples of these mines that were discussed in the Dodson declaration and Plaintiffs brief, and the related exhibits to the Dodson declaration, because Plaintiffs' claim regarding OSM's failure to ensure against jeopardy is an ESA citizen claim and not an APA claim, as discussed above, that claim is not limited to the administrative record, and the Court

---

[7] Since these statements are "rationally based" on Mr. Dodson's perceptions from his work, are helpful to understand the facts underpinning his standing, and not based on any specialized scientific knowledge, they are in fact proper under Rule 701 anyway.

may properly consider the permit violation information included in the exhibits to the Dodson declaration and may simply take judicial notice of the permit violation information.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice (at any stage of the proceeding) of adjudicative facts that are not subject to reasonable dispute if they are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014). That includes taking notice of public records and facts that are verifiable with certainty. *Id*. at 67 ("[J]udicial notice may be taken of public records and government documents available from reliable sources.") (citing *Hamilton v. Paulson,* 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008), *rev'd on other grounds,* 666 F.3d 1344, 399 U.S. App. D.C. 77 (D.C. Cir. 2012)); *Wash. Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 905 (D.C. Cir. 1996) (common law right of access to "public records" includes access to government documents "created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived").

Because the Court may take judicial notice of facts contained in public records, *see Covad Commc'ns Co. v. Bell Atl. Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005), even if this were not an ESA citizen suit claim, the Court could take notice of the permit violation information in the exhibits to the Dodson declaration, since, as Mr. Dodson explains, such information was obtained by accessing the West Virginia Department of Environmental Protection permit search database, and the exhibits contain true and correct copies of the permit violation information obtained from that database. *See* Dodson Decl. at ¶¶ 37-39, Dkt. No. 42-2.

These facts are also subject to judicial notice because the information qualifies for supplementation as extra-record evidence under *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir.

15

1989). *Contra* Def. Mot. at 21. In *Esch*, the court provided 8 "exceptions countenancing use of extra-record evidence," which included "when the agency failed to consider factors which are relevant to its final decision," and "in cases where agencies are sued for a failure to take action." *Esch*, 876 F.2d at 991. Here, the permit violation information shows that OSM failed to consider all relevant factors (*i.e.*, whether the mines at issue had already caused harm to listed species' habitat), and this case concerns OSM's failure to ensure against jeopardy and to reinitiate Section 7 consultation. And because the record does not contain *any* permit violation information for the mines that were noticed by Plaintiffs—which OSM should have reviewed in its oversight role— the extra-record evidence "point[s] out an '*entirely new*' general subject matter that the defendant agency failed to consider." *Oceana, Inc. v. Ross,* 454 F. Supp. 3d 62, 70 (D.D.C. 2020) (citation omitted). Therefore, the permit violation information would qualify for supplementation, and the Court may take judicial notice of the facts set forth in the State's permit files that were included as exhibits to the Dodson declaration. There is therefore no reason to strike this information from the Dodson declaration or Plaintiffs' summary judgment brief.

Defendants' suggestion that information about permit violations at these mines is irrelevant to the case is meritless. Def. Mot. at 13. *First*, the fact that the record does not contain information pertaining to permit violations for mines noticed by Plaintiffs shows that OSM failed to provide the oversight that the 2020 BiOp requires even *after* the agency was made aware of violations, and that the agency acted in an arbitrary and capricious manner when reviewing the State's decision not to initiate the technical assistance "coordination" process for these mines. As Plaintiffs argued, rather than actually investigating whether these mines posed a risk to listed crayfish, OSM simply accepted the States' determination that "coordination" was not required

16

for these mines. *See* Pls. Op. Br. at 41. But that determination was clearly contrary to the facts, and the permit violation information supports that contention.

*Second*, Defendants have argued that Plaintiffs used "unscientific" methods to determine which mines may affect listed crayfish and did not go through the technical assistance "coordination" process to establish species-specific protective measures ("SSPMs"), and that some mines do not require SSPMs because they will have no effect on listed species. Def. Op. Br. at 36, Dkt. No. 45. Plaintiffs anticipated that Defendants might raise such baseless arguments about how mines that were violating the 2020 BiOp were identified by Plaintiffs. The Dodson declaration explains the scientific process that was used to identify these mines, and such information is reasonable to include in a declaration explaining how this case was developed to show standing and to provide the Court with background information.

Indeed, the permit violation information confirms that mines identified by Plaintiffs certainly "may affect"—and have already adversely affected—the last remaining habitat of the highly imperiled Guyandotte River crayfish, and that those mines, regardless of the methods used to identify such mines, require SSPMs. The Court should, therefore, consider the extra-record evidence in light of Defendants' baseless assertions through which they attempted, without support, to cast aspersions on whether the mines noticed by Plaintiffs actually required SSPMs developed through the 2020 BiOp's "coordination" process.

### B. Curry Declaration (Dkt. No. 42-6).

As discussed above with regard to the Dodson declaration, much of what Defendants take issue with in the Curry declaration pertains to standing. This includes paragraphs 9, 13, 16-17, 22-26, 30, and 34-42, which set forth Ms. Curry's concrete interests in observing, studying, and protecting listed crayfish (and her longstanding efforts to do so), her understanding from her

17

work as to the status and impacts to those species from SMCRA-regulated coal mining, her

understanding of how the 2020 BiOp and the ESA are intended to protect those interests, and,

therefore, how Defendants' violations are causing her harm and how such harm may be redressed

by the Court. All of these statements are proper to support standing.[8]

Furthermore, none of this information was provided as extra-record expert testimony,

which should be clear from the fact that Plaintiffs did not rely on any of it to establish any factual

predicate for any of their summary judgment arguments. Defendants are needlessly attacking

reasonable statements that are often included in standing declarations—for what purpose is

unclear. But there is certainly no reason to strike basic background information from a standing

declaration that goes to establishing the elements of standing. And Defendants have not claimed

that a single one of those statements contained any false or misleading information. In fact, they

state that the statements are "cumulative" of existing record evidence, which confirms that the

statements are consistent with the record. Since Plaintiffs are only relying on these statements for

standing and not as extra-record evidence for arguments, it makes no difference if they are

"cumulative" with the record, and there is no basis for striking them.

---

[8] For example, Defendants take issue with Paragraph 9 of the Curry declaration, which merely states:

> Having grown up in Kentucky and spent many years both as a youth and in adulthood exploring and swimming in the rivers and streams in Appalachia, I have long been extremely concerned about the many harms that surface and underground coal mining activities cause for freshwater species and their habitats, particularly species on the brink of extinction like the candy darter, Guyandotte River crayfish, and Big Sandy crayfish.

Curry Decl. at ¶ 9, Dkt. No. 42-6. This is clearly included to show that Ms. Curry has a long-standing interest in protecting listed species from coal mining to support her standing, and does not provide any extra-record, scientific testimony, or additional argument. It is ridiculous for Defendants to seek to strike these types of routine statements regarding standing from a standing declaration.

Defendants also take issue with Ms. Curry' reference to a statement made by an FWS biologist in an email obtained through FOIA, which Plaintiffs also referred to in their opening brief. *See* Pls. Op. Br. at 31-32. That statement—which was not pre-decisional or deliberative, but merely a statement of fact regarding the threats to the Guyandotte River crayfish—was used in the Curry declaration to establish her interests in protecting listed crayfish—including by making and reviewing FOIA requests—and the basis for her understanding that the Guyandotte River crayfish is very close to the point of extinction, which support's her contention that Defendants' violations of the 2020 BiOp and the ESA pose a very real risk to her interests in observing and protecting the species. The information contained in the email, wherein a FWS biologist confirmed that further harm to Guyandotte River crayfish critical habitat could wipe out the species, establishes the injury in fact to Ms. Curry's interests, and is, therefore, useful and proper for establishing her standing.

Regarding Plaintiffs' reference to that email in their summary judgment brief, it was not used to establish any predicate fact that Plaintiffs relied on for their argument, but only included as background so the Court could see how dire the situation is for the Guyandotte River crayfish. Because Plaintiffs' ESA citizen suit claims are not limited to the record and because this is a quote from a FWS biologist obtained through FOIA, the Court may take notice of the information. That statement is also consistent with the record evidence regarding the imperiled status of the Guyandotte River Crayfish[9]—though it is also useful to note the opinion of a FWS

---

[9] The Guyandotte River crayfish now only survives in two streams in West Virginia—Pinnacle Creek and Clear Fork in West Virginia's Wyoming and Logan Counties, both of which are heavily impacted by coal mining activities. 80 Fed. Reg. 18710, 18716 (Apr. 7, 2015); FWS_37462.

19

biologist on the issue—and Defendants do not dispute the statement or suggest that it is in any way incorrect or misleading. There is, therefore, no reason to strike it.

### C. Thoma Declaration (Dkt. No. 42-7).

While the Thoma declaration discusses information pertaining to the status and impacts to listed crayfish, it is clearly only intended as a standing declaration and not to provide extra-record scientific evidence, as Defendants contend. Def. Mot. at 17-18. Mr. Thoma is indeed an expert on crayfish, as is evident from his declaration; however, he is also a member of the Center for Biological Diversity, and the information he provides merely goes to his interests in observing and studying these imperiled species, which he has been doing for years, and how Defendants' violations harm those interests. That necessarily requires Mr. Thoma to opine on how impacts to listed crayfish from the failure to comply with the ESA and the 2020 BiOp undermine his ability to continue his research and publishing articles about these species. Plaintiffs did not rely on any of Mr. Thoma's statements as evidence in their motion for summary judgment, which shows that the Thoma declaration was only intended to establish standing and not as extra-record expert testimony. The statements in his declaration are proper for establishing standing, and there is no basis for striking anything in his declaration.

### D. Young Declaration (Dkt. No. 42-8).

As with the other declarations, much of what Defendants label as "irrelevant" or "needlessly cumulative" in the Young declaration was provided to show that Mr. Young has a concrete interest in protecting and observing listed species affected by SMCRA-regulated coal mining and that Defendants' violations of the 2020 BiOp harm those interests. None of what is provided in the Young declaration was intended to be included in the record as expert testimony, and indeed none of it was relied on in Plaintiffs' briefing, other than to meet their

20

constitutionally-required standing obligations. The Young declaration, therefore, does not provide additional legal argument as Defendants confusingly contend, Def. Mot. at 19, and does not violate any rules of evidence, since nothing in that declaration was used as evidence for anything other than to establish standing.

Therefore, the Young declaration properly provided specific facts regarding the status of and impacts to listed crayfish that he has an interest in to support his standing.[10] Defendants' arguments regarding this being inadmissible under Federal Rule of Evidence 701 are inapposite as this information was not being relied on to support Plaintiffs argument, and, regardless, is in fact proper under Rule 701 as it is "rationally based" on Mr. Young's perception, helpful to understand the facts underpinning his standing, and not based on any specialized scientific knowledge, but rather his review of publicly available information, including documents in the record here, which Defendants admit are consistent with Mr. Young's statements. *See* Def. Mot. at 19. Indeed, Defendants do not suggest that anything in the Young declaration is in any way false or misleading.

Since Plaintiffs did not rely on the Young declaration for their summary judgment argument and the declaration is clearly intended only to support standing and not to make any legal or scientific argument or to add anything to the record, Defendants' meritless motion should be denied.

---

[10] Defendants also take issue with Mr. Young's discussion of a mine that is "not at issue in this case," Def. Mot. at 19; however, Defendants fail to grasp that the discussion of that mine is not intended to provide evidence of specific impacts, but rather to show Mr. Young's concrete interests in protecting listed species from mining, and how those interests have been harmed by SMCRA-regulated coal mining. Young Decl. ¶¶ 14-15, Dkt. No. 42-8. These statements are therefore valid to support standing, and there is no basis for striking them.

21

### E.  Sneed Declaration (Dkt. No. 42-9).

As Defendants acknowledge, the Sneed declaration is clearly intended to provide standing. Def. Mot. at 19. Defendants' argument that the declaration somehow "veers off course" is unfounded. As discussed above, Mrs. Sneed's understanding of how the 2020 BiOp and the ESA are intended to function is not provided as lay witness testimony to support Plaintiffs' substantive arguments, but only to explain the basis for her standing (*i.e.*, to show that she is injured by Defendants' failure to comply with the 2020 BiOp and thus the ESA). This is neither a waste of time nor irrelevant. *See id.*

Since Plaintiffs clearly did not rely on the Sneed declaration for their summary judgment arguments and the declaration is clearly intended only to support standing and not to make any legal or scientific argument, Defendants' attempt to strike the declarant's statements must, yet again, be denied.

### F.  Hepler Declaration (Dkt. No. 42-10).

The declaration of Mr. Hepler and the exhibits attached thereto provide maps of several of the mines that were noticed by Plaintiffs, which are merely intended to provide technical background information so that the Court could see the proximity of some of the mines to designated critical habitat where the State erroneously determined that it did not need to engage in the 2020 BiOp's technical assistance "coordination" process. Providing this background information is appropriate here. Such maps pertain directly to Plaintiffs' ESA citizen suit claim that OSM is in ongoing violation of its mandatory Section 7 duties, and is therefore not subject to the record limit rule, as discussed above.

Thus, there is no basis for striking these maps; however, even if the Court were to strike or disregard these maps, it would not change the ultimate conclusion that Defendants have failed to implement the 2020 BiOp and are thereby jeopardizing listed species in violation of the ESA.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied. The Court should not strike any statements from Plaintiffs' standing declarations or any portions of Plaintiffs' motion for summary judgment.

April 13, 2025.                                    Respectfully Submitted,

/s/ Hannah Connor
Hannah Connor (DC Bar #1014143)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 681-1676
Email: hconnor@biologicaldiversity.org

/s/ Jared M. Margolis
Jared M. Margolis (admitted *pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
Phone: (802) 310-4054
Email: jmargolis@biologicaldiversity.org

*Attorneys for Plaintiffs*

23