## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, APPALACHIAN VOICES, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT, LANNY E. ERDOS, in his official capacity as Director of the Office of Surface Mining Reclamation and Enforcement, UNITED STATES FISH AND WILDLIFE SERVICE, DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, and BRIAN NESVICK, in his official capacity as Director of the U.S. Fish and Wildlife Service, <br><br> Defendants. | Civil Action No. 1:23-cv-03343 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFFS' EXTRA RECORD DECLARATIONS AND EXHIBITS

**Table of Contents**

**Page**

I.    Introduction.................................................................................................................................1

II.   Argument ....................................................................................................................................2

    A.    The Court Should Strike Plaintiffs' Extra-Record Exhibits.......................................2

        1.    Plaintiffs' Attempt to Introduce Extra-Record Materials is Contrary to the Law of this Case and Untimely ................................................................................2

        2.    ESA Citizen Suits Are Not Subject to *De Novo* Review .......................................3

    B.    The Court Should Strike Plaintiffs' Extra-Record Declarations to the Extent they are Not Limited to Plaintiffs' Standing ...................................................8

        1.    Dodson Declaration (ECF 42-2) ...........................................................................10

        2.    Curry Declaration (ECF 42-6)................................................................................13

        3.    Thoma Declaration (ECF 42-7) .............................................................................14

        4.    Young Declaration (ECF 42-8)...............................................................................15

        5.    Sneed Declaration (ECF 42-9) ...............................................................................15

        6.    Hepler Declaration (ECF 42-10).............................................................................16

III.  Conclusion.................................................................................................................................16

**Table of Authorities**

| Cases | Page(s) |
|---|---|

*350 Mont. v. Bernhardt*, 443 F. Supp. 3d 1185 (D. Mont. 2020)..................................................8

*Asarco, Inc. v. EPA*, 616 F.2d 1153 (9th Cir. 1980)..................................................................5

*Bennett vs. Spear*, 520 U.S. 154 (1997) .................................................................................7

*Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678 (D.C. Cir. 1982) ........................................3, 4, 5, 8

**Camp v. Pitts*, 411 U.S. 138 (1973) ...........................................................................5, 7

*Chandler v. Dist. of Col.*,
    Civ. No. 08–1158 (HHK/JMF), 2009 WL 8725113 (D.D.C. Sep. 3, 2009) ..........................2

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
    78 F. Supp. 3d 208 (D.D.C. 2015)........................................................................9

*Consolo v. FMC*, 383 U.S. 607 (1966) ..................................................................................3

*Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38 (D.D.C. 2018)......................................5, 6

**Ctr. for Biological Diversity v. U.S. Off. of Surface Mining Reclamation & Enf't*,
    No. CV 23 - 3343 (SLS), 2025 WL 1503802 (D.D.C. May 27, 2025) ........................................passim

*Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535 (D.D.C. 2021)......................................6, 7

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of the U.S.*, 85 F. Supp. 3d 387 (D.D.C. 2015) ..........................14

*Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15 (D.D.C. 2013) ......................................11

*Envt'l Def. Fund v. Costle*, 657 F.2d 275 (D.C. Cir. 1981)..................................................7

**Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ..............................................................5

*Medina Cnty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687 (5th Cir. 2010)..............................8

*Mooney v. Fresenius Med. Care Holdings, Inc.*,
    No. 22-CV-12037-AK, 2024 WL 3905976 (D. Mass. Jan. 25, 2024) ..........................................13

*Morgan v. United States*, 304 U.S. 1 (1938) ..............................................................................14

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ..........................3

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007)..........................................14

*Nat'l Broad. Co. v. United States*, 319 U.S. 190 (1943) ...............................................................................3

*Newton Cnty. Wildlife Ass'n v. Rogers*, 141 F.3d 803 (8th Cir. 1998) .....................................................8

*\*Oceana v. Ross*, 920 F.3d 855 (D.C. Cir. 2019)....................................................................................14

*Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62 (D.D.C. 2020)........................................................................2

*Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*, 573 F. Supp. 3d 294 (D.D.C. 2021) ..........................8

*Pac. Rivers Council v. Shepard*, No. 03:11-CV-442-HU, 2012 WL 950032 (D. Or. Mar. 20, 2012) ...........8

*Pepper v. United States*, 562 U.S. 476 (2011)....................................................................................... 2, 6

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010) ...............................8

*River Runners for Wilderness v. Martin*, 593 F.3d 1064 (9th Cir. 2010).......................................................5

*\*San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971 (9th Cir. 2014)........................................5

*Sierra Club v. McLerran*, No. C11-1759RSL, 2012 WL 5449681 (W.D. Wash. Nov. 6, 2012) .................8

*\*Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158 (D.D.C. 2014) ....................................................11

*Tagg Bros. & Moorhead v. United States*, 280 U.S. 420 (1930)....................................................................3

*\*United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963)...........................................................................3

*Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788 (D.C. Cir. 1984) ...................................................5

**Statutes**

5 U.S.C. § 551(13) ....................................................................................................................................4
5 U.S.C. § 706.................................................................................................................................4, 5, 6, 9
5 U.S.C. § 706(1) ......................................................................................................................................4
5 U.S.C. § 706(2) ......................................................................................................................................4
5 U.S.C. § 706(2)(A)..................................................................................................................................4

**Rules**

Fed. R. Evid. 201 ....................................................................................................................................13
Fed. R. Evid. 402 ......................................................................................................................................9
Fed. R. Evid. 403 ......................................................................................................................................9
Fed. R. Evid. 701 .............................................................................................................................9, 10, 13
Fed. R. Evid. 702 ...............................................................................................................................9, 10

## I.    Introduction

Plaintiffs' extra-record materials are impermissible and the Court should strike them. Plaintiffs' Endangered Species Act ("ESA") citizen suit claims are not subject to de novo review under controlling law, and Plaintiffs' claim that they are not seeking de novo review is simply not credible. Plaintiffs' very contention is that "ESA citizen suit claims are not subject to the [Administrative Procedure Act's ("APA")] record limitation rule." ECF 49 at 2. As a result, Plaintiffs contend that they may introduce extra-record materials by right. That argument is flatly contrary to law and the Court should reject it. Similarly, Plaintiffs' alternate contention that their extra-record materials are "background information" intended to show that the Defendant agencies failed to consider an entirely new general subject matter is also flatly contrary to law. Plaintiffs already made this argument and the Court rejected it, ruling that the Office of Surface Mining Reclamation and Enforcement's ("OSM") administrative record – which is already over 69,500 pages long – provides an adequate basis to adjudicate this case, including Plaintiffs' ESA citizen suit claims. *Ctr. for Biological Diversity v. U.S. Off. of Surface Mining Reclamation & Enf't*, No. CV 23 - 3343 (SLS), 2025 WL 1503802 (D.D.C. May 27, 2025) ("*CBD*"). The Court should reject Plaintiffs' attempt to relitigate this claim.

Plaintiffs' attempt to justify their six extra-record declarations fares no better. Plaintiffs profess to have proffered their declarations solely to support their allegations of standing, but it is plain to see that Plaintiffs have not simply proffered standing declarations. Rather, Plaintiffs have proffered witnesses to provide fact and expert opinion testimony and to authenticate and introduce Plaintiffs' extra-record materials into evidence in an attempt to bolster Plaintiffs' claims. This is improper for a host of reasons, as Defendants have demonstrated. The Court should strike the declarations to the extent they go beyond standing. Since Plaintiffs have represented to the Court that their declarations are proffered solely for standing purposes, they should have no objection to the Court striking those portions of the declarations that go beyond that limited purpose.

II.     **Argument**

   A.  **The Court Should Strike Plaintiffs' Extra-Record Exhibits**

   1.  **Plaintiffs' Attempt to Introduce Extra-Record Materials is Contrary to the Law of this Case and Untimely**

As Defendants noted in their motion to strike, Plaintiffs failed to explain why they did not include their latest extra-record materials in their motion to complete or supplement the administrative record. ECF 44 at 4-5 (citing *Chandler v. Dist. of Col.*, Civ. No. 08–1158 (HHK/JMF), 2009 WL 8725113, *2 (D.D.C. Sep. 3, 2009)). This point was met with silence in Plaintiffs' opposition. The Court should summarily strike Plaintiffs' extra-record materials as untimely and waived. If the Court strikes the materials on these grounds, then it need not reach the parties' remaining arguments.

Indeed, Plaintiffs are attempting to end-run the Court's denial of their motion to complete or supplement the administrative records. Plaintiffs argue that their latest extra-record materials should be considered because they are "only intended to provide background" (ECF 49 at 2), but Plaintiffs already tried this argument in their motion to complete or supplement the administrative record in this case and the Court rejected it. *CBD*, 2025 WL 1503802. As the Court noted, Plaintiffs sought to "add ten sets of documents to an administrative record that is already over 69,500 pages long" and "they argue[d] that all of them should be added to the administrative record as necessary background for the Court to determine whether the agency considered all of the relevant factors. The Court disagrees and denies the Plaintiffs' motion." *Id.* at *1. That ruling is law of the case, and Plaintiffs are thus foreclosed from rearguing that the administrative records are inadequate to allow for judicial review of their claims. *Pepper v. United States*, 562 U.S. 476, 506 (2011).

This Court explained that, "[t]o satisfy the 'relevant factors' exception, the document in question must do more than raise nuanced points about a particular issue; it must point out an entirely new general subject matter that the defendant agency failed to consider." *Id.* (citing *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 70 (D.D.C. 2020)). In other words, the inquiry is not whether the agency failed to

2

consider the extra-record materials themselves, but rather whether the extra record materials show that the agency "*entirely* failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added). This Court has ruled that extra-record materials are not permitted for that purpose in this case, and the Court should reject Plaintiffs' attempt to relitigate the issue.

### 2.   ESA Citizen Suits Are Not Subject to *De Novo* Review

As Defendants demonstrated in their motion, in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, the Supreme Court "has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) (citing *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420 (1930); *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 227 (1943)); *see also Consolo v. FMC*, 383 U.S. 607, 619 n.17 (1966)). In *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 686 (D.C. Cir. 1982), the D.C. Circuit ruled that this well-established principle of law applies to the ESA's citizen suit provision. Thus, the law of this Circuit is that judicial consideration of ESA citizen suit claims "*is to be confined to the administrative record* and that no de novo proceeding may be held." *Id.* (citing *Carlo Bianchi & Co.*, 373 U.S. at 709) (emphasis added). Plaintiffs are wrong to assert that "*Cabinet Mountains* does not hold that a court resolving an ESA citizen suit claim is confined to the record." ECF 49 at 5. That is precisely the holding of *Cabinet Mountains*.

*Cabinet Mountains* is dispositive of Plaintiffs' claim that their "ESA citizen suit claims are not subject to the [Administrative Procedure Act's ("APA")] record limitation rule." ECF 49 at 2. *Cabinet Mountains* also is dispositive of Plaintiffs' claim that the ESA borrows the APA's standard of review because the ESA does not specify a standard of review, but inexplicably does not also borrow the APA's scope of review even though the ESA likewise contains no scope of review. The D.C. Circuit held in *Cabinet Mountains* that, "[s]ince the ESA does not specify a standard of review, judicial review

is governed by section 706 of the [APA], 5 U.S.C. § 706 (1976)." 685 F.2d at 685. Section 706 contains

the APA's standard of review as well as its scope of review, so if "judicial review is governed by section

706," that necessarily means that Section 706's scope of review governs as well as its standard of

review. This is true whether a plaintiff challenges a completed agency action or alleges an ongoing

failure to act.[1] Indeed, APA Section 706 authorizes courts to "compel agency action unlawfully

withheld or unreasonably delayed," 5 U.S.C. § 706(1), as well as to "hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law," *id.* § 706(2)(A). Section 706 does not set forth different scopes

of review for Section 706(1) claims challenging agency action and Section 706(2) claims challenging a

failure to act. For both Section 706(1) and 706(2) claims, the APA expressly directs that, "[i]n making

the foregoing determinations, *the court shall review the whole record or those parts of it cited by a party." Id.* at §

706 (emphasis added). The D.C. Circuit has held that judicial review of ESA citizen suit claims "is

governed by section 706 of the [APA], 5 U.S.C. s 706." *Cabinet Mountains*, 685 F.2d at 685. Plaintiffs

do not even attempt to address the plain language of the APA because it is indisputable.

Plaintiffs attempt to sidestep 100 years of Supreme Court authority, the D.C. Circuit's decision

in *Cabinet Mountains*, and the plain language of the APA by contending that they do not seek de novo

review. ECF 49 at 2. But that is precisely what Plaintiffs are advocating. Plaintiffs offer a categorical

argument that "ESA citizen suit claims are not subject to the [Administrative Procedure Act's

("APA")] record limitation rule." ECF 49 at 2. Plaintiffs offer no distinction between this and de novo

review. They fail to grasp that to abandon judicial review based on the administrative record is to

engage in de novo review. The Supreme Court has repeatedly held that, in a case subject to the APA's

standard of review, "[t]he task of the reviewing court is to apply the appropriate APA standard of

---

[1] As Defendants noted, the APA defines "agency action" as including the "failure to act." 5 U.S.C. § 551(13). ECF 44 at 9 n.2. Plaintiffs have no response to this point.

review, 5 U.S.C. § 706, to the agency decision *based on the record the agency presents.*" *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation modified). Extra-record evidence is, by definition, a "new record made initially in the reviewing court" rather than the "administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

In an ESA case that included an APA challenge to a biological opinion ("BiOp") as well as an ESA citizen suit claim against the action agency's reliance on the BiOp, the Ninth Circuit explained that "'[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency" and, "[i]n so imposing its judgment, *the reviewing court effectively conducts a de novo review of the agency's action rather than limiting itself to the deferential procedural review that the APA's arbitrary or capricious standard permits.*" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (citing *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980) (emphasis added); *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (per curiam)). And again, the D.C. Circuit expressly rejected de novo review for ESA citizen suit cases in *Cabinet Mountains*, 685 F.2d at 686. Plaintiffs' contention that the APA's scope of review can be cleaved from its standard of review flatly contradicts the law of this Circuit and is doctrinally untenable. The D.C. Circuit has made it clear that, "[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

Plaintiffs lean heavily on an assertion by the district court in *Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38, 44-45 (D.D.C. 2018) that "the appropriate <u>standard</u> of review to be applied — [is] a concept distinct from the question of the permissible <u>scope</u> of the record" under the APA. That non-binding statement is at odds with all the controlling authority discussed above as well as the plain language of the APA, which the *Ross* opinion did not discuss. APA Section 706 sets forth a single scope of review to govern all claims subject to Section 706's standard of review. Moreover, *Ross* does

5

not help Plaintiffs because it *rejected* the very legal theory they rely on here "that <u>all</u> citizen-suit ESA cases may involve materials outside the administrative record." *Id.* at 43; *contra* ECF 49 at 3 (Plaintiffs arguing that ESA citizen suit claims "are not subject to the APA's scope of review").

Rejecting this categorical argument, the *Ross* court found that the "*Plaintiffs' specific claims*" in that particular case were distinct from those in *Cabinet Mountains* and required evidentiary showings that the administrative record in that particular case could not provide. *Ross*, 349 F. Supp. 3d at 43 (emphasis added). That is inapposite to this case, where this Court has ruled that the agencies' administrative records provide an adequate basis upon which the Court can decide all of Plaintiffs' claims, including those asserted under the ESA's citizen suit provision. *CBD*, 2025 WL 1503802 at *1. That ruling is law of the case, and Plaintiffs are foreclosed from now rearguing that the agencies' administrative records are inadequate to allow for judicial review of their claims. *Pepper*, 562 U.S. at 506; *contra* ECF 49 at 7. Indeed, in *Ross*, the plaintiffs sought "an injunction of [] ongoing agency action" based on allegations of unlawful "take" in violation of ESA Section 9. *Ross*, 349 F. Supp. 3d at 43, 45. Plaintiffs have no Section 9 claim here and they do not seek analogous injunctive relief.

In fact, this Court squarely rejected Plaintiffs' contention that their claims are not limited to the administrative records because they allege ongoing agency inaction. *CBD*, 2025 WL 1503802 at *16-18.[2] The Court noted that "the case law in this District counsels against considering extra-record evidence for agency inaction claims when they are brought alongside agency action claims." *Id.* at 17. The Court was persuaded by the reasoning in *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021), where the court rejected the idea that "'the court is confined to the administrative

---

[2] As Defendants explained in their opposition to Plaintiffs' administrative record challenge, this is not a failure to act case because OSM and FWS each undertook final agency actions in direct response to Plaintiffs' notice of intent to sue by preparing written determinations that concluded reinitiation is not required. OSM_0031488, 0030926. Regardless, as explained above, APA Section 706 sets forth the same scope of review for claims challenging agency action and claims challenging a failure to act. These points were all met with silence in Plaintiffs' opposition to Defendants' motion to strike.

record in determining whether [the U.S. Fish & Wildlife Service's ("FWS")] failure to act was 'per se arbitrary and capricious' . . . but is permitted to engage in *de novo*, extra-record review to assess whether the processing of their applications was 'unreasonably delayed[.]'" *CBD*, 2025 WL 1503802 at *17 (quoting *Dallas Safari Club*, 518 F. Supp. 3d at 539).

It is well-established that, even where there has been a "failure to explain administrative action as to frustrate effective judicial review, the remedy [i]s not to hold a de novo hearing but . . . to obtain *from the agency*, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp*, 411 U.S. at 142–43 (emphasis added). Thus, Plaintiffs' erroneous assertion that the agencies' administrative records are incomplete would not, in any case, grant them leave to submit extra-record evidence for their intended purpose of showing "violations of SMCRA permits at several of the mines notices [sic] by Plaintiffs that did not follow the requirements of the 2020 BiOp and/or did not undertake the technical assistance 'coordination' process, and are therefore clearly jeopardizing listed species in violation of the ESA." ECF 49 at 10. A "judicial venture outside the record can… never, under *Camp v. Pitts*, examine the propriety of the decision itself." *Envt'l Def. Fund v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981).

Plaintiffs simply ignore these authorities and points of law and that the deadline for filing a motion to complete or supplement the administrative records expired on October 31, 2024 because there is no response. In sum, *Ross* rejected the legal theory Plaintiffs rely on here, its facts are inapposite, its reasoning contradicts controlling authority and the plain language of the APA, and it is not binding on this Court in any event.

Plaintiffs' extended discussion of *Bennett vs. Spear*, 520 U.S. 154 (1997) (ECF 49 at 7-8), is puzzling. There is no dispute here that Plaintiffs' Counts I and II are subject to judicial review under the ESA's citizen suit provision, and *Bennett* says nothing about the scope of review for ESA citizen suit claims. The Court should disregard this diversion as well as Plaintiffs' recitation of Ninth Circuit

case law and district court case law from within the Ninth Circuit (ECF 49 at 3-5, 7-10), which is inapposite for the reasons previously explained (ECF 44 at 10-12) and has no bearing on this Court, which is bound to follow Supreme Court authority and the law of this Circuit as laid down in *Cabinet Mountains*, 685 F.2d 678. It is worth noting that, in focusing on Ninth Circuit case law, Plaintiffs ignore that three other Circuits (the Fifth, Eighth, and Tenth) have concluded that judicial review of ESA citizen-suit claims is limited to the administrative record in accordance with the APA. *Medina Cnty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1105 n.3 (10th Cir. 2010); *Newton Cnty. Wildlife Ass'n v. Rogers*, 141 F.3d 803, 808 (8th Cir. 1998); *accord 350 Mont. v. Bernhardt*, 443 F. Supp. 3d 1185, 1201 (D. Mont. 2020), *aff'd in part & rev'd in part on other grounds*, *350 Mont. v. Haaland*, 50 F.4th 1254 (9th Cir. 2022); *Sierra Club v. McLerran*, No. C11-1759RSL, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012); *Pac. Rivers Council v. Shepard*, No. 03:11-CV-442-HU, 2012 WL 950032, at *3 (D. Or. Mar. 20, 2012).

In sum, the law of this Circuit is that judicial consideration of ESA citizen suit claims "*is to be confined to the administrative record* and that no de novo proceeding may be held." *Cabinet Mountains*, 685 F.2d at 686 (emphasis added). Plaintiffs' claim that ESA citizen suit claims are not record review claims under APA Section 706 is plainly erroneous, and the Court should reject it. If a litigant believes that an agency's administrative record on an ESA citizen suit claim is deficient, its recourse is to file a motion to complete or supplement the agency's administrative record under the judicially recognized exceptions in this Circuit. *See, e.g., Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*, 573 F. Supp. 3d 294, 307 (D.D.C. 2021). Plaintiffs filed such a motion in this case and this Court found that it lacked merit. *CBD*, 2025 WL 1503802. Plaintiffs may not now relitigate that ruling.

## B. The Court Should Strike Plaintiffs' Extra-Record Declarations to the Extent they are Not Limited to Plaintiffs' Standing

Plaintiffs' central justification for submitting their declarations is that they are not proffered "as evidence but rather for standing." ECF 49 at 12. That is simply not credible. Plaintiffs are plainly

8

attempting to use their declarants to provide opinion testimony and to authenticate and introduce extra-record evidence that is intended to bolster Plaintiffs' claims. To make matters worse, Plaintiffs are attempting to do so in total disregard of the scope and standard of review in this case as well as the Federal Rules of Evidence.

Plaintiffs believe that because they have labeled the declarations as limited to supporting their standing, the declarations "do not provide extra-record evidence at all." *Id.* That is plainly erroneous. Declarations are extra-record evidence, but they are generally permitted to establish a plaintiff's standing. *See, e.g.*, *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015). Plaintiffs also seem to believe that any testimony is admissible so long as they label it as related to their standing, which is also plainly erroneous. Plaintiffs are not the arbiter of whether testimony is limited to their standing. Because Plaintiffs' declarations go beyond standing and this is a record review case governed by APA Section 706, this Court should strike the portions of the declarations that are not limited to supporting Plaintiffs' standing.

In addition, while this is not an evidentiary proceeding subject to the Federal Rules of Evidence, it is reasonable to strike those portions of the declarations that do not comport with those rules. Under Rules 402 and 403, irrelevant evidence is inadmissible, and relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In addition, the opinions of a lay witness must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Here, Plaintiffs' declarations run afoul of these rules. In Plaintiffs' own words, the declarations proffer the declarants' purported "knowledge and opinion[s]" "about how the 2020 BiOp is intended

9

to function, how the ESA is intended to protect listed species, and the impacts of coal mining on those species." ECF 49 at 10. These are merits questions, not matters of Plaintiffs' standing. This testimony should be stricken for this reason alone. Moreover, these are matters that require scientific, technical, or other specialized knowledge within the scope of Rule 702, and Plaintiffs have not attempted to qualify any declarant as an expert. Lastly, the Court has no need for such testimony, which is needlessly repetitive and cumulative of the administrative records. As Defendants noted in their motion to strike, Plaintiffs proffer testimony that is copied *verbatim* from one declaration to the next. Plaintiffs have no response to this point. As explained below, Plaintiffs' attempts to justify their individual declarations are wholly unavailing.

### 1. Dodson Declaration (ECF 42-2)

It is plain to see that Plaintiffs are not attempting to use Mr. Dodson merely as a standing declarant. Rather, Plaintiffs proffer Mr. Dodson's "personal opinion and judgment" (ECF 42-2, ¶ 1) of OSM's oversight of state programs in Virginia, West Virginia, and Kentucky under Title V of SMCRA, and his factual recitation of Plaintiffs' April 2023 investigation into certain permits issued by those states. Plaintiffs also proffer Mr. Dodson to authenticate and introduce into evidence extra-record materials in the way of enforcement actions taken by the West Virginia regulatory authority under the Surface Mining Control and Reclamation Act of 1977 ("SMCRA") (*i.e.*, notices of violation or cessation orders). *See* ECF 42-3, 42-4, & 42-5. This is not standing testimony, and it should be stricken for this reason alone.

Plaintiffs attempt a mystifying assortment of conflicting justifications for Dodson's declaration, none of which have merit. First, they claim Dodson's testimony "go[es] to standing and w[as] not provided as extra-record evidence on the merits." *Id.* at 13. That is simply incorrect. Indeed, at the same time Plaintiffs claim Dodson's testimony is limited to standing, they claim it qualifies as fact witness opinion testimony under Rule 701. ECF 49 at 14 n.7. Then, Plaintiffs claim Dodson's

10

testimony explaining "the process that Plaintiffs used to identify mines that were operating in violation of the 2020 BiOp and discuss some examples of those mines" is "background information to explain how Plaintiffs developed the list of mines at issue." *Id.* at 14. Again, this is not standing testimony; it is testimony intended to support and bolster the merits of Plaintiffs' claims. Moreover, it is unnecessarily cumulative of the administrative records, which already adequately covers Plaintiffs' April 2023 allegations as well as OSM's swift investigation and corrective action over two and a half years ago. *See* ECF 43 at 36-40; FWS_0037016-36; OSM_0030878-79, OSM_0031005, 0031021, 0031047, 0031292, 0031307, 0031444-48, 0031449-53, 0031454-58, 0031478-90, 0031506-18, 0031547-548, 0031519-35, 0031702-08, 0031670-76, 0031681-87; 0031702-09, 0031729-32, 0031761-62, 0031824-27.

Plaintiffs next resort to claiming that the Court should take judicial notice of Dodson's testimony. ECF 49 at 14-15. This argument has no merit. As Defendants explained in their motion to strike (ECF 44 at 21), "[j]udicial notice is 'typically an inadequate mechanism' for a court to consider extra-record evidence in reviewing an agency action." *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 172 (D.D.C. 2014) (citing *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 n.14 (D.D.C. 2013)), *aff'd Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015). Plaintiffs ignore this case law. They argue that Dodson's testimony is subject to judicial notice because it falls within an exception for supplementing the administrative record. This argument is foreclosed, however, under the Court's prior ruling and because the deadline for invoking such exceptions in this case expired on October 31, 2024. *CBD*, 2025 WL 1503802; ECF 24.

Moreover, Dodson's testimony does not fall within any exception for supplementing the records. This Court previously found that "Plaintiffs ha[d] not justified departing from th[e] general [record review] rule, particularly with an administrative record as vast as this one," which is already over 69,500 pages long. *CBD*, 2025 WL 1503802 at *1. Indeed, Plaintiffs' assertion that the agencies'

administrative records do not "contain *any* permit violation information for the mines that were noticed by Plaintiffs" (ECF 49 at 16) is contrary to fact. For example, OSM's record includes numerous annual reports methodically documenting OSM's oversight of the state programs, including OSM's inspections and OSM-issued violations, and inspections and state-issued violations, with additional focus on violations resulting in off-site impacts. OSM_0027381-83, 94-95; 0028251-53; 0028321-22, 53-55; 0028409-10, 51-53; 0029133-38, 69-71; 29228-30, 94-96; 0029524-30, 73-75; 0029632-37, 67-69; and 0029727-28, 68-70. Further, the record contains records of violations of elements of protection and enhancement plans. *Id.* at 0031940-50, 51-59, 60-66, 67-75. Plaintiffs' claim that they have identified an "'entirely new general subject matter'" that OSM and FWS failed to consider (ECF 49 at 16) has no basis in fact or law.

Dodson's testimony about Plaintiffs' cherry-picked collection of state-issued enforcement actions under SMCRA by the West Virginia regulatory authority over a five-year period – some of which even predated the 2020 BiOp and others that post-date the agencies' administrative records[3] – that concern individual mining permits Plaintiffs do not challenge in this case, is immaterial to this Court's review of the claims presented in this case. ECF 42-2 ¶¶ 21-24. The Dodson exhibits themselves show that the cited violations did not require OSM's involvement because they were issued and cured at the state level. *Id.* In addition, Plaintiffs' recurring claim that "OSM simply accepted the States' determination that 'coordination' was not required for these mines" is wrong. ECF 49 at 16-17. Plaintiffs ignore OSM's action plans, which require the permits Plaintiffs reference to undergo technical assistance. *Id.* In addition, FWS field offices have been actively engaged in the technical

---

[3] Plaintiffs have no response to the fact that it would be especially prejudicial to consider Plaintiffs' selectively curated list of documents from the full complement of materials that post-date the administrative records that document implementation of the September 2023 action plans, OSM's continued oversight activities, and the successful resolution of technical assistance on mines throughout Virginia, West Virginia, and Kentucky from that same time period.

assistance process with West Virginia (FWS_0028416-37527), providing expert advice based on the best available science.

In the end, Plaintiffs abandon any pretense that Dodson's testimony is limited to standing, declaring that his testimony is intended to prove effects from mining on the Guyandotte River crayfish and that those mines require SSPMs. ECF 49 at 17. This is not standing testimony, it is impermissible extra-record testimony that attempts to bolster the merits of Plaintiffs' claims. Even if Rule of Evidence 201 applied in this case (it does not), a court "cannot take notice of the veracity of the allegations in [a] declaration." *Mooney v. Fresenius Med. Care Holdings, Inc.*, No. 22-CV-12037-AK, 2024 WL 3905976, at *5 (D. Mass. Jan. 25, 2024), *reconsideration denied*, No. 1:22-CV-12037-AK, 2024 WL 3903445 (D. Mass. Aug. 22, 2024). Moreover, Dodson's testimony is improper legal and scientific opinion testimony on matters requiring scientific, technical, or other specialized knowledge contrary to Rules of Evidence 701. The testimony also lacks proper foundation and includes a significant amount of testimony that does not appear to be based on Dodson's own perception.

The Court should strike, at a minimum, the following paragraphs of the Dodson declaration (ECF 42-2): ¶¶ 14-16, 21, 24, 28-43, 46, 49, 50-51, and the extra-record exhibits to Mr. Dodson's declaration: ECF 42-3, 42-4, & 42-5. In addition, the Court should strike the argument from Plaintiffs' motion for summary judgment that relies on the Dodson declaration and exhibits: ECF 42-1 at 11, 33-34.

### 2. Curry Declaration (ECF 42-6)

It is evident that, rather than being limited to standing, Plaintiffs' primary aim of the 12-page Curry declaration is to try to introduce into evidence an extra-record, internal FWS email exchange from 2017 – three years before the 2020 BiOp and ITS at issue in this case – that Plaintiffs obtained from FWS outside of this litigation through the Freedom of Information Act ("FOIA"). ECF 44 at 15. Plaintiffs have possessed this email for some *eight years*, and they make no attempt to explain their

13

failure to include it in their motion to complete and supplement OSM's administrative record. Moreover, the email is prejudicial and has no probative value in this Court's review under the APA's standard of review. *Oceana v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *Morgan v. United States*, 304 U.S. 1, 18 (1938); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658–59 (2007); *Delta Air Lines, Inc. v. Exp.-Imp. Bank of the U.S.*, 85 F. Supp. 3d 387, 425 (D.D.C. 2015). Plaintiffs also proffer Curry's opinions about the biological condition of the Guyandotte River and Big Sandy crayfish, the alleged effects of surface coal mining and reclamation operations on those species, and the sufficiency of OSM's oversight of state programs in Virginia, West Virginia, and Kentucky under Title V of SMCRA. ECF 44 at 15.

In essence, Plaintiffs attempt to justify the Curry declaration by passing it off as limited to Plaintiffs' standing (ECF 49 at 17-20), which is wholly unavailing. The Court should strike, at a minimum, the following paragraphs from the Curry declaration (ECF 42-6): ¶¶ 9, 13, 16-17, 22-26, 30, 34-42 and exhibit thereto. In addition, the Court should strike the related argument from Plaintiffs' motion for summary judgment: ECF 42-1 at 6, 31.

### 3. Thoma Declaration (ECF 42-7)

Rather than being limited to standing, the Thoma declaration proffers his opinions on the biological condition of the Guyandotte River and Big Sandy crayfish, how surface coal mining and reclamation operations allegedly affect those species, and the effectiveness of OSM's oversight of state programs in Virginia, West Virginia, and Kentucky under Title V of SMCRA. ECF 44 at 17-18. Thoma proffers testimony as to his credentials and extra-record publications in the field of crayfish biology and purports to attach a curriculum vitae to his declaration, though one is not, in fact, attached. *Id.*

Plaintiffs claim that "Mr. Thoma is indeed an expert on crayfish, as is evident from his declaration," but they nonetheless attempt to pass his testimony off as solely limited to Plaintiffs'

14

standing. ECF 49 at 20. This attempt is wholly unavailing. The Court should strike, at a minimum, the following paragraphs from the Thoma declaration (ECF 42-7): ¶¶ 10-11, 21, 23-26.

### 4. Young Declaration (ECF 42-8)

The Young declaration proffers legal and scientific opinions and conclusions on matters requiring scientific, technical, or other specialized knowledge, without proper foundation, such as whether "[c]oal mining in the Big Sandy basin and its tributary watersheds degrades water quality and habitat" and whether "the 2020 Biological Opinion fails to ensure that the requirements of the ESA are being met in states that have delegated SMCRA programs, such as in West Virginia and Kentucky." ECF 44 at 18-19; ECF 42-8, ¶¶ 9, 18. Mr. Young also proffers testimony about a West Virginia mine's alleged noncompliance with the Clean Water Act under supervision from the U.S. Army Corps of Engineers (ECF 42-8, ¶ 15) that is not at issue in this case.

Plaintiffs claim that "[n]one of what is provided in the Young declaration was intended to be included in the record as expert testimony" (ECF 49 at 20) and that the Young declaration does not include improper argument because Plaintiffs did not cite the declaration in their summary judgment motion. *Id.* Whether Plaintiffs cited the declaration in their summary judgment motion or intended to submit improper expert opinion testimony or argument are plainly not the standards for admissibility. The Court should strike, at a minimum, the following paragraphs from the Young declaration (ECF 42-8): ¶¶ 9-10, 14-18, 20.

### 5. Sneed Declaration (ECF 42-9)

Unlike Plaintiffs' other declarations, the Sneed Declaration is, for the most part, limited to Plaintiffs' standing. Defendants only request that the Court strike three paragraphs, 16-18. ECF 42-9. These paragraphs include Sneed's inadmissible "personal opinion and judgment" on matters such as whether the 2020 BiOp "ensure[s] that the requirements of the ESA are being met in states that have delegated SMCRA programs, such as in Kentucky," and Sneed's "understanding" of the workings of

15

ESA Sections 7 and 10 and the technical assistance process under SMCRA. ECF 42-9 at ¶¶ 1, 18. Plaintiffs' attempt to pass this testimony off as related to their standing is wholly unavailing. ECF 49 at 22.

### 6. Hepler Declaration (ECF 42-10)

Plaintiffs proffer the Hepler declaration to authenticate and admit three extra-record maps Hepler created using "Arcgis Pro, an industry standard geographic information system software platform." ECF 42-10, ¶ 4. Plaintiffs make no claim that Hepler's testimony is related to their standing, and it plainly is not. ECF 49 at 22-23. Plaintiffs claim they may submit the Hepler declaration as of right to support their ESA citizen suit claims. *Id.* That is wrong as a matter of law, as explained above. As a factual matter, the "examples" of mining permits Hepler identifies are irrelevant and a waste of time in this case, which does not challenge those mining permits or otherwise require this Court to determine the proximity of those mines to designated critical habitat for protected crayfish species. Agency decision makers did not consider Hepler's maps, and they are therefore simply immaterial under the APA as well as cumulative of evidence in the records.

The Court should strike the Hepler declaration and its three exhibits in their entirety, along with related argument from Plaintiffs' motion for summary judgment: ECF 42-1 at 33-34.

### III.    Conclusion

For these reasons, the Court should strike all extra-record exhibits submitted with Plaintiffs' declarations, all proffered testimony that is not limited to Plaintiffs' standing, and associated argument from Plaintiffs' motion for summary judgment, as follows:

(1) Dodson declaration (ECF 42-2): ¶¶ 14-16, 21, 24, 28-43, 46, 49, 50-51, and exhibits thereto: ECF 42-3, 42-4, & 42-5. Additionally, the Court should strike the argument from Plaintiffs' motion for summary judgment that relies on the Dodson declaration and exhibits: ECF 42-1 at 11, 33-34.

(2) Curry declaration (ECF 42-6): ¶¶ 9, 13, 16-17, 22-26, 30, 34-42 and exhibit thereto. In addition, the Court should strike the argument from Plaintiffs' motion for summary judgment that relies on the Dodson declaration and exhibits: ECF 42-1 at 6, 31.

(3) Thoma declaration (ECF 42-7): ¶¶ 10-11, 21, 23-26.

(4) Young declaration (ECF 42-8): ¶¶ 9-10, 14-18, 20.

(5) Sneed declaration (ECF 42-9): ¶¶ 16-18.

(6) Hepler declaration: entire declaration and exhibit (ECF 42-10) and related argument from Plaintiffs' motion for summary judgment: ECF 42-1 at 33-34.

Dated: April 27, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

/s/ *Robert P. Williams*
ROBERT P. WILLIAMS
Sr. Trial Attorney (SBN 474730 (DC))
U.S. Department of Justice
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 532-3101
Email: robert.p.williams@usdoj.gov

**Attorneys for Defendants**

17